## CENTRAL HANOVER BANK & TRUST CO. v. UNITED STATES.

District Court, S. D. New York.
April 24, 1946.

Rathbone, Perry, Kelley & Drye, of New York City (Theodore Pearson, of New York City, of counsel), for plaintiff.

John F. X. McGohey, U. S. Atty., and Samuel Rudykoff, Asst. U. S. Atty., both of New York City, for defendant.

MANDELBAUM, District Judge.

Plaintiff seeks a refund of income taxes paid by it for the calendar year 1936 in the amount of $41,783.40.

Except for the testimony of an officer of the plaintiff bank, the case was submitted to the court for disposition upon a stipulation of facts in evidence.

The stipulation of facts referred to is elaborate both as to facts and figures, but the court will paraphrase only so much of it which it deems essential for the determination of the issue posed.

Plaintiff, Central Hanover Bank and Trust Company, hereinafter referred to as the Bank, is a corporation organized under the banking laws of this State.

The Tulsa Company, Inc., hereinafter referred to as Tulsa, a corporation organized under the laws of this State in 1931 was a wholly-owned subsidiary of the Bank.

From 1931 to 1935, inclusive, the Bank's income tax returns showed a deficit in that the deductions taken on the returns plus the credits, were greater than the Bank's gross income. No income tax was paid by the Bank during those five years. The income tax returns for those five deficit years show that the Bank was allowed bad-debt deductions of $32,216,437.75, which to the extent of $22,316,688.51 resulted in no tax benefit.

Tulsa comes into the picture between the years 1932 to 1935, inclusive, during which time and at various intervals the Bank transferred to Tulsa all loans then standing on the Bank's books which had been charged off as worthless or partially worthless. The transfer consisted of 299 loans aggregating a face amount of $14,645,555.80. The consideration paid by Tulsa to the Bank was the book balance of the loans as carried on the Bank's books except in

---

certain cases where the consideration exceeded the book balance.

Tulsa was created for the purpose of engaging in salvage operations, i.e., to realize what it could on the worthless or partially worthless debts transferred to it by the Bank.

After the transfer of the various loans from the Bank to Tulsa, the latter made recoveries on some of these loans and included such recoveries in its gross income, the same being reflected in Tulsa's income tax returns.

In 1936 Tulsa was dissolved and all of its assets were transferred to the Bank. Among these assets were 24 out of the original 299 loans originally transferred to it, aggregating a face amount of $3,415,-196.92.

After the retransfer, the Bank, in 1936, succeeded in collecting $278,556.01 on these bad debts and they have been designated as "Group B" recoveries, the subject of this action. The Bank prior to the transfer of the loans to Tulsa had charged off the "Group B" recoveries as totally or partially worthless.

The Bank also made recoveries in 1936 on bad-debts which during previous years it retained for itself without transfer to Tulsa. These recoveries totalled $262,658.-78 and have been designated as "Group A" recoveries over which there is no dispute.

In compliance with the law as it stood in 1937, the Bank filed its income tax return for year 1936 and included in its gross income both "Group A" and "Group B" recoveries on bad-debts and paid an income tax on those recoveries although it made no actual profit. It was a return of part of its capital. In other words, the recoupment merely reduced the amount of loss it had previously had in the years when it wrote them off as worthless.

Congress evidently recognizing the hardship imposed on taxpayers in a situation such as above described passed what is commonly known as the "tax benefit rule". Sec. 22(b) (12) of the Revenue Act of 1936, as added by Sec. 116(a) of the Revenue Act of 1942, 26 U.S.C.A. Int.Rev.Code, § 22(b) (12).

This rule, in essence, provides that recoveries by a taxpayer of amounts deducted by it in previous years in respect of bad debts, taxes and delinquent amounts, were not to result in taxable income in the year of recovery to the extent that the prior deduction has failed to produce any tax benefit. To phrase it differently, it simply means that if the taxpayer didn't save any taxes by charging off the bad-debts and subsequently makes a recovery, he could exclude the recovery from gross income and would not be obliged to pay any income tax on it.

As a result of this enactment which by its terms was made retroactive, the Bank filed a refund claim on March 14th, 1940 in respect of the year 1936. The government paid part of the claim ("Group A" recoveries) but withheld payment on the "Group B" recoveries.

It is conceded by the government that had the bad-debts comprising the "Group B" recoveries remained with the bank continuously without transfer to Tulsa, the "tax benefit rule" would be applicable and it would be entitled to the refund.

This narrows the issue to but one point, namely, did the temporary ownership of the bad-debts by Tulsa defeat the Bank's right to exclude the recoveries thereon ("Group B") from gross income?

The defendant, in supporting the affirmative of this proposition, lays much stress on the business activities of Tulsa. It says that the nature and extent of its business establishes it as a separate taxable entity citing Moline Properties, Inc. v. Commissioner, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499, and National Investors Corporation v. Hoey, 2 Cir., 144 F.2d 466. And, that the transfers from the Bank to Tulsa were sales within the meaning of Secs. 111 to 113 inclusive of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, pages 854, 855, 859. Specifically, Sec. 112 reads: "Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section".

Thus, argues the defendant, a sale shall as a matter of law constitute a tax event, requiring realization of the entire loss or

gain consequent thereon, rendering the "tax benefit rule" inapplicable to the transfers from the Bank to Tulsa.

The Bank appears to recognize that Sec. 112 would be operative if a gain or loss had resulted in the transfers from the Bank to Tulsa. But I agree with the Bank that if the transfers are sales within the meaning of Sec. 112, a distinction is apparent since no gain or loss was realized by the transfers. It was a transfer for salvage purposes only. In fact, the loss was already fixed on the books of the Bank prior to the time of the transfer. As mentioned at the outset, the loans were transferred to Tulsa at the amount carried on the Bank's books or even more in some instances.

In the light of what was sought to be remedied by the passage of the "tax benefit rule" I am unable to go along with the defendant in its contention that the Bank forfeited its right to a redetermination of its original action by the temporary transfer of the bad debts to Tulsa.

Basically, the Bank pleads that it is in precisely the same tax position as if it had never made the transfers to Tulsa. I deem it so to be. In the final analysis the Bank made the loans, made the charge-offs and received no tax benefit therefrom, and it was the Bank who made the recoveries and paid the tax thereon.

The net result of the defendant's refusal to permit the Bank to exclude the "Group B" recoveries from its gross income for the year 1936, is to tax the losses sustained by the bank. The court is unwilling to subscribe to that theory in the absence of a clear direction by Congress or controlling decisions. The Court has examined the case of Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248, urged by both sides as supporting their respective positions. It is the court's view that essentially the case stands for a proposition other than that which is before the court. Such expressions in the opinion which refer to the "tax benefit rule" are not in any sense decisive of the issue presented.

The objections made by the defendant during the course of the trial to certain of the stipulated facts contained in paragraphs 16 and 21 of the stipulation and to the testimony of the plaintiff Bank's officer, as being irrelevant to the issue and upon which the court reserved decision are overruled.

The court concludes that Sec. 22(b) (12) of the Revenue Act of 1936, as added by Sec. 116(a) of the Revenue Act of 1942, entitles the Bank to exclude the "Group B" recoveries from gross income.

Judgment is granted to the plaintiff Bank, the amount of which shall be determined in accordance with paragraph 24 of the stipulation of facts.

The following are the court's findings of fact and conclusions of law:

### Findings of Fact

1. The facts set forth in the stipulation of the parties dated February 26, 1946, are found.

2. During the years 1932 to 1936, inclusive, The Tulsa Company, Inc., was actively engaged in business.

3. All of the properties and assets owned by Tulsa were acquired by it either directly or indirectly as the result of conducting salvage operations on bad debts and worthless securities which were transferred by plaintiff to Tulsa for that purpose.

4. Neither the formation nor the operation of Tulsa nor plaintiff's transactions with Tulsa during any of the years 1932 through 1936, inclusive, reduced the combined taxes of plaintiff and Tulsa below the amount which plaintiff would have paid if Tulsa had never been organized.

### Conclusions of Law

1. The Court has jurisdiction of both the parties and the subject matter of this case.

2. The suit arises under and is governed by the provisions of Section 22(b) (12) of the Revenue Act of 1936, as added by Section 116(a) of the Revenue Act of 1942.

3. All of the evidence contained in the Stipulation and in the Exhibits attached to the Stipulation, and all of the testimony introduced by plaintiff at the trial, as set forth on pages 23 through 29, page 30 and page 35 of the Stenographer's Minutes,

is competent, relevant, material and admissible.

4. The entire sum of $541,214.79, recovered by plaintiff in 1936 in respect of debts theretofore charged off and allowed as wholly or partially worthless, including the $278,556.01 designated in the Complaint and in the Stipulation as the "Group B" recoveries, was income attributable to the recovery during 1936 of bad debts, within the meaning of Section 22(b) (12) of the Revenue Act of 1936, and was less than the amount of the recovery exclusions with respect to such bad debts within the meaning of said Section, and should accordingly not be included in the plaintiff's gross income for said year.

5. Plaintiff is entitled to recover the income taxes paid by it for the year 1936 attributable to said $278,556.01 "Group B" recoveries during that year, notwithstanding that for part of the time between plaintiff's charge-off of said debts and plaintiff's recoveries thereon, the debts were held by plaintiff's wholly-owned subsidiary, The Tulsa Company, Inc.

6. Judgment should be entered for the plaintiff and against defendant for such amount which shall be determined in accordance with paragraph 24 of the stipulation of facts.