*Decision will be entered under Rule 50.*

---

RICE DRUG COMPANY, FORMERLY N. RICE DRUG & CIGAR CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15269. Promulgated April 20, 1948.

*Sidney B. Gambill, Esq.*, for the petitioner.
*Stanley W. Herzfeld, Esq.*, for the respondent.

### OPINION.

DISNEY, *Judge*: This case involves deficiencies determined in excess profits taxes for the taxable years ended September 30, 1943 and 1944,

in the amounts of $2,845.85, and $10,320.96, respectively. The single issue presented is whether, under section 711 (a) (1) (E) of the Internal Revenue Code, the petitioner is entitled to exclude from its excess profits net income recoveries made by it in the taxable years on debts for which deduction had been allowable to a partnership from which the petitioner acquired the accounts.

The petitioner submitted the matter upon the pleadings. The respondent offered as evidence only the petitioner's income and declared value and excess profits tax returns for each of the taxable years, which were received in evidence. From admitted allegations and evidence adduced, we find as follows:

Petitioner is a corporation, organized under the laws of Pennsylvania, with principal office at Pittsburgh, Pennsylvania. Petitioner was incorporated on October 28, 1941, and began business on November 1, 1941, under the name of N. Rice Drug & Cigar Co., which name was changed on April 20, 1945, to Rice Drug Co. The income tax returns for the periods here involved were filed with the collector of internal revenue for the twenty-third collection district of Pennsylvania, at Pittsburgh, Pennsylvania.

During the fiscal years ended September 30, 1943 and 1944, petitioner recovered, through collection of bad debts, the amounts of $14,319.76 and $8,831.08, respectively, deductions for which were allowable from gross income for taxable years beginning prior to January 1, 1940. Such recoveries were of debts previously charged off by N. Rice Drug & Cigar Co., a partnership and predecessor of petitioner.

The facts are not in dispute. The question above stated is presented to us as one of first impression, and neither party cites authority as directly controlling. The petitioner, in substance, argues that section 711 (a) (1) (E) of the Internal Revenue Code [1] is a relief statute and should be liberally construed in favor of the taxpayer; that Congress did not intend to subject to the excess profits tax, income of the type here involved, the basic purpose of the statute being to apply excess profits rates only to income earned in the war period, from war period operations; that various relief provisions were enacted with that purpose in mind; that the statute should be read in the light of such purpose; that the word "allowable" in the statute was used to fix the date of the origin of the bad debt, rather than to fix the identity

---

[1] SEC. 711. EXCESS PROFITS NET INCOME.

(a) TAXABLE YEARS BEGINNING AFTER DECEMBER 31, 1939.—The excess profits net income for .any taxable year beginning after December 31, 1939, shall be the normal-tax net income, as defined in section 13 (a) (2), for such year except that the following adjustments shall be made:

(1) EXCESS PROFITS CREDIT COMPUTED UNDER INCOME CREDIT.—If the excess profits credit is computed under section 713, the adjustments shall be as follows:

*    *    *    *    *    *    *

(E) Recoveries of Bad Debts.—There shall be excluded income attributable to the recovery of a bad debt if a deduction with reference to such debt was allowable from gross income for any taxable year beginning prior to January 1, 1940.

of the taxpayer who charged off, or was entitled to charge off, the bad debt; that other and similar relief provisions enacted with section 711 (a) (1) (E), such as exclusion of recovery of taxes under the Agricultural Adjustment Act under section 711 (a) (1) (D), is proof that Congress did not intend to deny the right to exclude from income recoveries of bad debts merely because they originated with another taxable entity, and that the congressional intent was that the income from recovery of bad debts should be free from excess profits tax unless deductions therefor had been taken in a prior excess profits tax period; whereas here the deduction was prior to January 1, 1940, and prior to war influence on income. The question of identity of taxpayer who received benefit of the deduction in such a prior year, the petitioner urges, does not seem important, for the basis at the time of the recoveries was the same, regardless of who took the deduction, the basis in either event being zero. The important question petitioner says is the nature of the income.

The respondent's view may be epitomized as follows: That the claims were acquired in a manner not shown, from a partnership, and that the petitioner concedes that its basis therein is zero; that solution of the present question is aided by consideration of section 22 (b) (12) (A) of the Internal Revenue Code (providing for exclusion from gross income of bad debts to the extent of the amount of the recovery exclusions, and defining bad debt as one on account of worthlessness or partial worthlessness for which a deduction was allowed in a prior taxable year), because both statutes are relief statutes, and both relate to exclusion from income of recoveries from bad debts; that it has been held, in situations where section 22 (b) (12) was applicable, that a transferee of claims, deducted by the transferor as bad debts, is not in the same position as the transferor, as to excluding recoveries from income. Among other cases, *National Bank of Commerce of Seattle*, 40 B. T. A. 72; affd., 115 Fed. (2d) 875, is cited. Although that case did not involve section 22 (b) (12), it involved the question whether recoveries by a successor corporation of debts charged off by predecessor corporations were income to the successor. We found that the basis of the debts was zero, and therefore held that the recoveries were taxable income. Here, the petitioner agrees that the basis of the debt to it was zero.

Respondent also cites *Central Hanover Bank & Trust Co.* v. *United States*, 67 Fed. Supp. 23; affd., 159 Fed. (2d) 865, as indicating that, in order for a successor to exclude from income recoveries on debts charged off, they must have been charged off by the same entity, for therein the court, considering section 22 (b) (12), held that, although after the charge-off by the petitioner the debts had passed to its wholly owned subsidiary, they were later retransferred to the petitioner and therefore the petitioner could exclude the recoveries from income.

The respondent urges also that here petitioner collected a debt but did not recover a bad debt, and the concept of loss involved in "bad debt" is not applicable, for the petitioner never suffered such loss, therefore, never had the income attributable to recovery of a "bad debt" which may, under section 713 (a) (1) (E), be excluded from gross income.

There can, we think, be no doubt that under general principles, as considered in the above cases, the petitioner would not be allowed the exclusion. In the *Central Hanover Bank* case, *supra*, the court necessarily considered a transferee not entitled as such to the exclusion of recoveries of bad debts, as in such case it would have been superfluous to put the conclusion on the fact that the petitioner itself, prior to temporary holding by its subsidiary, charged off the debts.

In *Robert A. Haughey*, 47 B. T. A. 1, we had a situation approaching this one. There the charge-off had been made, with tax benefit, by a partnership; but petitioners, the partners, were seeking in a later year when the partnership recovered to exclude the recovery from their individual income, but we said that the partners could not invoke the tax benefit rule with respect to the partnership. The *National Bank of Commerce* case, *supra*, is clearly authority that the same entity must charge off and recover, in order to exclude the recovery from income.

Moreover, as to the petitioner here, the debt was not bad; the petitioner had never charged off any deduction for loss, and, therefore, for that reason it was not interested in the question of restoration of income, or whether in the deduction it had a tax benefit—concepts inhering in this question. It simply acquired an asset with a basis of zero, as admitted, and, therefore, ordinarily would properly be charged with income when it recovered thereon. But what of the fact that here we have involved the law of excess profits tax? The nub of our problem is whether there is some reason growing out of that law to decline to apply the general principle above reviewed. Does the excess profits tax law work an exception? Petitioner, in effect, says that the income from the recovery of the charged off debt was not the war income sought to be taxed by the excess profits tax, therefore it should be excluded. This presupposes, of course, that the income had its origin in the fact that the debt formerly charged off was in these taxable years recovered. If it had no such origin, the argument fails. Since we have seen above that the debt was in fact acquired with zero basis, it appears to have no such connection with the earlier charge-off as to cause us to consider its origin as earlier than its acquisition from the partnership, and it therefore appears not to be the war income which, petitioner argues, alone was the object of the excess profits tax. Petitioner apparently acquired the debt at the time of its incorporation on October 28, 1941.

We think that this income is not properly "attributable to the recovery of a bad debt." It is attributable to a profit made from an asset because the petitioner had therein a basis of zero. It seems in the same class with any other gain made during the war years from acquisition and disposition of property at a profit, and not because of any position of recoupment of something it had at one time lost. That view, we think, under the above cases, is required by the expression "attributable to the recovery of a bad debt if a deduction * * * was allowable" for a year earlier than 1940; and only such a recovery of what was once lost by the one recovering was, in our opinion, to be covered by section 711 (a) (1) (E). The argument as to limitation to war income therefore fails, for this is income during the war years, with no rational connection with an earlier allowable deduction. As we discern the intent of Congress, it was that a taxpayer who had taken the benefit of a deduction in an earlier year because of a charge-off of worthless investment (thereby recovering the base) and who would ordinarily be required to account for the deducted amount when at a later time he collected the amount, should not have to do so for excess profits tax purposes because he had no real income during the war years, having gotten the benefit of it earlier at the time of deduction, and the later recovery being a mere restoration of base. This is no such case, but one of income to the extent of realization over a base, here of zero. The income here is not attributable to a period in which excess profits tax was not imposed. The fact that other specific forms of relief were given the payer of excess profits tax, as urged by the petitioner, only serves to accentuate the idea that each item of relief is specific, contrary to the normal rules, and that we must consider it separately. That it is a relief provision, broadly to be construed in petitioner's favor, is not here helpful, for the petitioner is not found to be in a position calling for relief as it would be if it were the original owner who charged off the debt.

After analyzing and studying this problem, we fail to find reason to consider the recovery here to be within the ambit of such income as should not be subjected to the excess profits tax. It accrued during the war period. It had no basis, either technically or logically, to this taxpayer, in the charge-off by a predecessor. There was intent to impose the excess profits tax on all income within the period of its effect, save as excepted. The income here is not reasonably to be excepted.

Reviewed by the Court.

*Decision will be entered for the respondent.*

ARUNDELL, *J.*, dissents.