THE NATIONAL BANK OF COMMERCE OF SEATTLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12508. Promulgated May 6, 1949.

*Thomas N. Fowler, Esq.*, for the petitioner.
*Douglas L. Barnes, Esq.*, for the respondent.

OPINION.

BLACK, *Judge*: The principal question for our determination in this proceeding is whether the petitioner herein, as the successor bank, having acquired the assets of the smaller banks in a reorganization, is entitled to certain "recovery exclusions" from its taxable income in

1942 and 1943 within the meaning of section 22 (b) (12) of the Internal Revenue Code.[1]

Respondent contends that the issue herein is *res judicata* by reason of the prior decision of the Board of Tax Appeals in the case of this petitioner in Docket No. 89720, and, if it is not, that the recoveries in 1942 and 1943 on the debts which were owed to and charged off by predecessor banks during 1933 do not constitute recovery exclusions under section 22 (b) (12) of the code which are to be excluded from petitioner's gross income in 1942 and 1943. We shall consider the issue of *res judicata* first.

In 1933 Marine Bancorporation owned about 90 per cent of the stock of the petitioner and six smaller banks. In 1933, pursuant to a plan of reorganization, the assets of the six smaller banks were transferred to petitioner, subject to all their liabilities, and thereafter the business of the six smaller banks was to be carried on by petitioner through branches. Immediately prior to the transfer the smaller banks charged off their books certain debts considered to be worthless or subject to criticism by either state or national bank examiners. Deductions were claimed for some of such debts in the income tax returns for 1933. In 1934 petitioner made recoveries on some of the debts which had been charged off in 1933, but in its income tax return for 1934 it claimed that such recoveries were not income, but a return of capital. Respondent determined that the recoveries should be included in income, and, on petition to redetermine the deficiency, the Board upheld the respondent, which was affirmed by the Circuit Court of Appeals for the Ninth Circuit. We found that the debts at the time of the transfer had a zero basis in the hands of the predecessor banks for the reason that they had been ascertained to be worthless and charged off in a prior year and, therefore, held that the recoveries in 1934 were taxable income to the petitioner. As we have already stated, our decision was affirmed by the Ninth Circuit in *National Bank of Commerce of Seattle* v. *Commissioner, supra*, though it fol-

---

[1] SEC. 22. GROSS INCOME.

\*      \*      \*      \*      \*      \*      \*

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter :

\*      \*      \*      \*      \*      \*      \*

(12) RECOVERY OF BAD DEBTS, PRIOR TAXES, AND DELINQUENCY AMOUNTS.—Income attributable to the recovery during the taxable year of a bad debt, prior tax, or delinquency amount, to the extent of the amount of the recovery exclusion with respect to such debt, tax, or amount. For the purposes of this paragraph :

\*      \*      \*      \*      \*      \*      \*

(D) Definition of Recovery Exclusion. The term "recovery exclusion", with respect to a bad debt, prior tax, or delinquency amount, means the amount, determined in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, of the deductions or credits allowed, on account of such bad debt, prior tax, or delinquency amount, which did not result in a reduction of the taxpayer's tax under this chapter (not including the tax under section 102) or corresponding provisions of prior revenue laws, reduced by the amount excludible in previous taxable years with respect to such debt, tax or amount under this paragraph.

lowed a somewhat different line of reasoning than that used by the Board of Tax Appeals.

In *Commissioner* v. *Sunnen*, 33 U. S. 591, the Supreme Court expounded the doctrine of *res judicata* with particular reference to issues of tax law, stating in part as follows:

These same concepts are applicable in the federal income tax field. Income taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action. Thus if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year. But if the later proceeding is concerned with a similar or unlike claim relating to a different tax year, the prior judgment acts as a collateral estoppel only as to those matters in the second proceeding which were actually presented and determined in the first suit. Collateral estoppel operates, in other words, to relieve the government and the taxpayer of "redundant litigation of the identical question of the statute's application to the taxpayer's status." *Tait* v. *Western Md. R. Co.*, 289 U. S. 620, 624.

\* \* \* \* \* \* \*

And so where two cases involve income taxes in different taxable years, collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice. It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged. *Tait* v. *Western Md. R. Co.*, supra. If the legal matters determined in the earlier case differ from those raised in the second case, collateral estoppel has no bearing on the situation. \* \* \*

Since our decision in Docket No. 89720, Congress enacted section 116 of the Revenue Act of 1942 (sec. 22 (b) (12), I. R. C.). This new section in effect excludes from gross income amounts otherwise taxable which are attributable to the recovery of bad debts, prior taxes and "delinquent amounts" to the extent the prior deduction or credit of such items did not reduce the tax liability of the taxpayer. In this proceeding, therefore, a different tax statute is involved, and the question is whether petitioner is entitled to its benefits. Because of this change in the law and in the issue involved, we conclude that the doctrine of *res judicata* is not applicable. *Commissioner* v. *Sunnen*, *supra*. Cf. *C. D. Johnson Lumber Corporation*, 12 T. C. 348.

On the merits petitioner contends that, since none of the deductions in the 1933 returns of the smaller banks involved herein resulted in a reduction of taxable income to the predecessor banks in view of other losses disclosed upon their returns, the predecessor banks, therefore, would, if they were still in existence, be entitled to the benefit of the "recovery exclusion" provided for in section 22 (b) (12) and, since it acquired all of the assets of the predecessor banks in a reorganization pursuant to which the basis of the said accounts is the same in its hands as in the hands of the predecessor banks, it is, therefore, entitled to the benefit of the "recovery exclusion." In other

words, petitioner contends that for the purposes of section 22 (b) (12) (D) it stands in the shoes of the predecessor banks. Section 22 (b) (12) (D) defines "recovery exclusion" and provides, with respect to the recovery of a bad debt, prior tax, or delinquency amount, that upon the recovery during the taxable year of such bad debt, prior tax, or delinquency amount there shall be excluded from gross income such part of the amount recovered "which did not result in a reduction of the taxpayer's tax."

The charge-off herein was made by the predecessor banks, which were entities separate and distinct from the petitioner. We think it is clear that the same entity must charge off and recover in order to be entitled to the "recovery exclusion" under section 22 (b) (12). In *Michael Carpenter Co.*, 47 B. T. A. 626; affd., 136 Fed. (2d) 51, we had a similar situation. In that case the taxpayer, pursuant to a tax-free reorganization, acquired in exchange for its capital stock the business and assets of a Wisconsin corporation. Among the assets acquired were claims for reimbursement against certain milling companies for processing taxes included in the 1935 flour prices paid by the Wisconsin corporation. During 1937 the taxpayer received directly or through the Wisconsin corporation certain amounts on account of processing taxes paid by the Wisconsin corporation to the milling companies upon flour which had been consumed by the Wisconsin corporation in its baking operations in 1935. The income tax return of the Wisconsin corporation for 1935 showed a loss of $27,768.29. Subsequent to the receipt of the payments, an amended return was filed in the name of the Wisconsin corporation by its former officers reflecting this refund, which amendment resulted in reducing the net loss from $27,768.29 to $15,861.79. The taxpayer's return for 1937 did not reflect as income the amounts received from the milling companies during that year. We determined that the claims the taxpayer acquired from the transferor constituted capital assets and that they had a zero basis in the transferor's hands at the time of the exchange, and we held, therefore, that anything realized thereon by the taxpayer in 1937 constituted taxable income. The taxpayer contended that, since the Wisconsin corporation's assets were acquired pursuant to a tax-free reorganization, all property received by it had the same basis in its hands as the property had in the hands of the transferor; that the contract rights had a basis of $1.38 per barrel in the transferor's hands and had the same basis in petitioner's hands; and that it received only $1 per barrel by virtue of the payments by the millers and, therefore, realized no taxable income. We pointed out, however, that the separate identity of the transferor and transferee must be recognized, and we held that the "1935 loss of the Wisconsin corporation was not transferable to or usable by petitioner, either directly or indirectly,

and that the personal defense available to the transferor did not survive the transfer to petitioner." The Seventh Circuit, in affirming the Tax Court, referred to section 116 of the Revenue Act of 1942 (sec. 22 (b) (12) of the code), which was not before us at the time of our decision, and stated in part as follows:

> Taxpayer relies heavily on this amendment. The amendment was not before the Tax Court at the time of its decision. The Government claims it is inapplicable for two reasons: (1) It was not this taxpayer's tax which had been affected by the payment, but the predecessor's; * * *
>
> It is to be noted that the amendment provides that the exclusion shall be applicable to instances where the expense involved the reduction of *taxpayer's tax*.

We think also *Rice Drug Co.*, 10 T. C. 642, supports the conclusion we have reached. In that case we said:

> * * * The *National Bank of Commerce* case, *supra*, is clearly authority that the same entity must charge off and recover, in order to exclude the recovery from income.
>
> Moreover, as to the petitioner here, the debt was not bad; the petitioner had never charged off any deduction for loss, and, therefore, for that reason it was not interested in the question of restoration of income, or whether in the deduction it had a tax benefit—concepts inhering in this question. It simply acquired an asset with a basis of zero, as admitted, and, therefore, ordinarily would properly be charged with income when it recovered thereon. * * *

While in the *Rice Drug Co.* case we had before us section 711 (a) (1) (E) of the code, relating to the excess profits tax, and did not have before us section 22 (b) (12), nevertheless, we think that what we said there is pertinent here and is authority in support of respondent's position.

We hold, therefore, that, since the deductions in 1933 in question were not made by petitioner, but by the predecessor banks, the petitioner is not entitled to the benefit of the "recovery exclusion" provided for under section 22 (b) (12). It follows, therefore, that the recoveries made by petitioner upon the accounts herein constitute income in 1942 and 1943. *National Bank of Commerce of Seattle, supra.*

*Decision will be entered for the respondent.*