*Decision will be entered for the respondent.*

THE MERCHANTS NATIONAL BANK OF MOBILE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20461. Promulgated June 30, 1950.

*Scott P. Crampton, Esq.*, for the petitioner.
*Homer F. Benson, Esq.*, for the respondent.

1376

.OPINION.

Disney, *Judge*: Petitioner insists that the respondent should have followed the ruling made by him on September 7, 1943, and allowed the loss sustained by it on the Dorgan-McPhillips Packing Corporation stock as an ordinary loss. Respondent asserts that the ruling is not applicable since the petitioner was not compelled to acquire the stock and did not acquire the asset in direct liquidation of the Merchants Securities Corporation. Petitioner argues that the intervening trust does not make the situation any different from what it would have been if it had received the assets directly from its affiliate.

The ruling is based upon a situation where the bank is not only required to take over stock but to dispose of it as soon as possible. Here the trustee was empowered to sell the assets and required to distribute to petitioner any surplus funds after liquidating liabilities. Petitioner had a right to acquire with or without consideration assets remaining after all liabilities had been satisfied. We find nothing in the instrument compelling it to take over the assets at any time.

The ruling contemplates a requirement that the asset be sold as soon as possible. Upon receipt of the stock in 1937, petitioner elected to hold it for a higher market. That conclusion discloses intention to hold the asset as an investment rather than as property held primarily for sale to customers in the ordinary course of its business or as a business of the transferor. Holding an asset for six years can not reasonably be said to be within the requirement of the ruling. Moreover, no proof was made by petitioner that it endeavored to sell the stock or held it primarily for sale.

Petitioner argues that if the letter ruling is not applicable, I. T. 3600, 1943, C. B. 369, requires a holding in its favor. That ruling relates to property taken over in satisfaction of debts, a method of acquisition materially different from the manner in which the stock in question was acquired.

We find no error in respondent's action in treating the loss as a long term capital loss.

The difference between the parties on the second issue is whether the amount of $18,460.58 realized in the transaction is taxable as long term capital gain, as contended by petitioner, or as ordinary income, as determined by the respondent.

The petitioner argues that there were two distinct transactions in different years, first a charge-off of the notes as bad debts, and then a sale of the notes, a capital asset having a zero basis for tax purposes. It cites *Rockford Varnish Co.*, 9 T. C. 171, *Stanley Switlik*, 13 T. C. 121, and similar cases as containing reasoning which requires a conclusion here in its favor, and *Conrad N. Hilton*, 13 T. C. 623, as governing the issue.

In the *Rockford Varnish Co.* case the notes were received in the ordinary course of the taxpayer's business in payment of open accounts and not acquired for holding as an investment. Later the notes were sold at a loss. The notes not having been held primarily for sale to customers in the ordinary course of the taxpayer's business, it was held that they constituted capital assets within the meaning of section 117 (a) (1) of the Internal Revenue Code.

In the *Stanley Switlik* case it was held that taxes paid by the taxpayers as transferors of assets of a corporation in complete liquidation constituted an ordinary loss, and not a capital loss.

The *Hilton* case follows the same general lines as the *Rockford* case. There the taxpayer received a note in exchange for a judgment which he had obtained against the maker and, after payments had been made on the principal, sold it to a bank. The question of whether ordinary income or capital gain was realized on the transaction with the bank turned on whether the note was disposed of in a bona fide sale or whether the amount received constituted payment of the note by the maker thereof. It was held that part of the amount received was in substance paid to the taxpayer by the maker and that the remainder was a sale of $100,000 of the face amount of the note, a capital asset.

The *Rockford* and *Hilton* cases involved sales of notes constituting capital assets, without a prior history of charge-offs and deductions from gross income with tax benefit. Here the full amount of the notes was charged off in prior years, and as a result the securities had no basis in the hands of the petitioner. The difference in facts is material.

The cost or capital petitioner had in the notes was recovered in prior years by the charge-offs with full tax benefit. Thereafter the notes, given for loans, ceased to be capital assets but represented income. *National Bank of Commerce of Seattle* v. *Commissioner*, 115 Fed. (2d) 875, affirming 40 B. T. A. 72. In that case the taxpayer acquired assets in a plan of reorganization, including some notes which

had been charged off earlier in the year by the transferors and had a zero basis in the hands of the transferee. In the course of its opinion holding that recoveries made by the transferee on the notes charged off by the transferors constituted income, the court said:

> * * * However, when such a loan becomes worthless, the amount thereof is loss of capital, but the income tax laws permit the bank to recoup its capital by deducting from the profits or income the amount of the loss. Thus the bank does not pay a tax on all its income, but on the amount of income less the loss on the worthless debt. The debt itself then loses its nature as capital, but represents that portion of the income which is not taxed, and the capital is the money taken from the profits or income. If the loan, after being deducted from income, is paid, then the lender is receiving profit or income—otherwise the lender would double its capital on one transaction. In other words, the profits or income used to pay back the capital when the debt is charged off is represented by the worthless loan, so that when such loan is paid the profits are replaced.
>
> * * * * * * *
>
> Thus, if the recoveries in question had been made by the smaller banks, they would of necessity been included in the returns as income.
>
> * * * While the loans were not capital assets in the hands of the smaller banks, upon sale to petitioner, such loans became capital assets in petitioner's hands. * * *

In *Commissioner* v. *First State Bank of Stratford*, 168 Fed. (2d) 1004, the taxpayer declared and paid a dividend in kind consisting of notes which it had in previous years charged off as worthless and deducted as bad debts. Recoveries were made on the notes later during the same year by the stockholders. The question was whether the recoveries thus made were income to the bank. The court, in holding that the recoveries represented income taxable to the bank, cited and quoted from the *National Bank of Commerce* case with approval, and remarked that the notes were assets of the bank in the sense that they represented potential income to the extent of the deduction previously allowed in taxes, but "were not capital assets for income tax purposes"; that in assigning the notes without recourse, "the bank assigned its vested right to receive the income that the notes represented" and that the property distributed as a dividend represented income and not a capital asset.

Petitioner seeks to distinguish the *National Bank of Commerce* and *First State Bank of Stratford* cases upon the ground that the payments there were made by the debtors and therefore the income was not received out of a sale to a third party. We are unable to agree with the view. The notes here ceased to be capital assets for tax purposes when they took on a zero basis as the result of deductions taken and allowed for charge-offs as bad debts.

Considering the matter realistically, as we must, petitioner recovered a portion of the amount that had previously reduced ordinary taxable income and the amount can not effectively offset the advantage so obtained without according it like treatment. As the court said

in *Rice Drug Co.* v. *Commissioner*, 175 Fed. (2d) 681, affirming 10 T. C. 642: "The 'recovery of bad debts' envisages the whole cycle of a claim becoming worthless and later being recovered by the same taxpayer, or perhaps one standing in his shoes, with the usual attending accounting and legal consequences." A sale of the right to receive income to other than the debtor did not alter the character of the asset from which the income was derived. To hold otherwise would place form above substance, contrary to the well established rule. The substance of the transaction was a recoupment of ordinary income which had escaped taxation by bad debt deductions.

In the *Hilton* case the note was a capital asset when sold, contrary to the situation here.

The reasoning of the *National Bank of Commerce of Seattle* and *First State Bank of Stratford* cases controls the question. Accordingly, we sustain the respondent on this issue.

To reflect adjustments agreed to in the stipulation,

*Decision will be entered under Rule 50.*