FIRST NATIONAL BANK OF LAWRENCE COUNTY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24005. Promulgated January 24, 1951.

John A. McCann, Esq., for the petitioner.
Kalman A. Goldring, Esq., for the respondent.

OPINION.

DISNEY, *Judge:* This case involves income tax for the calendar year 1944. Deficiency was determined in the amount of $4,347.45. The petitioner claims overpayment of $5,652.47. The only question presented is whether the sum of $58,117.73, received in the taxable year by the petitioner from retirement of bonds, after the bonds had been charged off, with tax benefit, in previous years, is taxable as ordinary income or capital gain. All facts were stipulated and are found by us as so stipulated. Only such as are regarded as necessary of statement in discussion of the issue will be set forth here.

The petitioner is a national banking corporation doing business at New Castle, Pennsylvania. Its Federal income tax return for 1944 was filed with the collector of internal revenue at Pittsburgh, Pennsylvania. Petitioner in 1935 acquired 6 per cent bonds of Pennsylvania Engineering Works in the face amount of $179,000. Petitioner's basis therein was $170,050. In 1936 petitioner received similiar additional bonds of Pennsylvania Engineering Works of a face value of $5,500 in lieu of interest on bonds held. Petitioner reported the fair market value, $5,225 as interest income for 1936 and paid income tax thereon. From 1936 through 1941 petitioner charged off and deducted, as worthless debts, on income tax returns its entire cost basis in the bonds, i. e., $175,275. It received no tax benefit as to $81,057.27 but the charge-offs and deductions, to the extent of $94,217.73, did result in reduction of petitioner's taxes.

The bonds acquired in 1935 were acquired in a transaction set forth in the excerpts of minutes of petitioner's board of directors, as follows: Prior to April 2, 1934, petitioner held the collateralized promissory note of Pennsylvania Engineering Works for $165,000, and on that date Pennsylvania Engineering Works was authorized by petitioner to execute a collateral note for $165,000, for the former note, and to pledge interim certificates for the approximate amount of bonds the bank had agreed to take if a bond issue was consummated, the note to be secured also by various collateral. On April 9, 1934, petitioner's directors authorized acceptance of the endorsement of Pennsylvania Engineering Corporation on the collateral note of Pennsylvania Engineering Works as stated in the minutes of April 2, 1934. On June 24, 1935, petitioner's directors approved the purchase of various bonds including $179,000 of Pennsylvania Engineering Works. On July 8, 1935, petitioner's directors approved an agreement subscribing for, and agreeing to accept Pennsylvania Engineering Works bonds at 95 per cent of face value "in payment of the principal of the indebted-

ness and obligation of Pennsylvania Engineering Works" to petitioner, and agreeing that upon delivery of the bonds the obligation, interim certificates and all collateral held should be surrendered to Pennsylvania Engineering Works. Petitioner's note record shows the note of $165,000, dated May 10, 1934, and paid, in the amount of $165,000, on June 19, 1935. Petitioner's collateral loan record shows the note as withdrawn by Pennsylvania Engineering Works. Petitioner's discount record for demand collateral loans shows entry of payment of the $165,000 note under date of June 19, 1935. Petitioner's daily journal for June 19, 1935, shows the transactions involving the note and bonds, and petitioner's bond register shows the history of the bonds from acquisition until written off.

In 1944 the issuer of the bonds redeemed and retired a part of the bonds held by petitioner in the face amount of $146,500, and redeemed and retired the balance in 1945.

The $146,500 exceeded, by $7,325, the original cost, $139,175, of the bonds so retired. The $139,175 had been written off in prior years by petitioner.

The petitioner and respondent agree that of the $139,175 basis recovered $81,057.27 constitutes recovery exclusions (section 22 (b) (12), Internal Revenue Code) and that this controversy relates entirely to the proper income tax treatment of the $58,117.73, the balance of the recovery of the $139,175 basis, and petitioner's claim for overpayment.

Petitioner treated $43,654.73 of the amount recovered in 1944 as ordinary income on its income tax return, but claims an overpayment by reason thereof in the amount of $5,652.47. The respondent agrees with the petitioner that the $7,325 excess of $146,500 over the $139,175 basis is capital gain, but treated $58,117.73, previously charged off with tax benefit, as ordinary income. The petitioner contends that it also is capital gain.

The petitioner's argument is, in short, that the amounts received in 1944 fall squarely within the language of section 117 (f) of the Internal Revenue Code.[1] The statute, petitioner argues, is clear and admits of no change by interpretation or construction, which would be to legislate. Tax statutes, it is argued, can not be extended beyond clear import of the language used, and if clear, plain, and unambiguous may not be construed to cover what is deemed to be even an absurd omission, through addition by the Court of any further limiting provision.

The respondent in substance argues that section 117 (f), relied on by the petitioner, does not apply; that a particular statutory provision

---

[1] SEC. 117 (f) RETIREMENT OF BONDS, ETC.—For the purposes of this chapter, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor.

prevails over a general one; that banks are treated differently from others in deduction of losses and recovery of debts previously written off; that section 117 (i) specifically deals with banks and provides that a net loss from sale or exchange of bonds shall not be considered sale or exchange of a capital asset; that here there was no sale and the entire amount written off in prior years was collected; that the bonds evidence a loan and not an investment because they were received in exchange for a previous promissory note with collateral security, of the same debtor, the bonds thus representing a continuance of the previous loan, so that the payment of the bonds in the taxable year was nothing more than payment of a loan, the excess of payment over principal being interest. To respondent's arguments the petitioner replies, in effect, that respondent errs in contending that there was continuation of old loan in the bonds and that the petitioner's records show that the bonds were purchased, the collateral was drawn, and petitioner had after the transaction a different asset, a bearer bond, a long term obligation with coupons attached. Petitioner also argues that respondent has admitted that the bonds are capital assets by recognizing that $7,325 received by petitioner in excess of its basis is capital gain; that respondent has omitted section 117 (c) and (d), and that petitioner agrees that a particular provision takes precedence over a generality but that section 117 (i) is particular, taking precedence over section 117 (d), and section 117 (f) is a special provision taking precedence over any other general provision. The cases cited by the respondent, petitioner says, do not involve redemption of bonds and assets not defined as capital assets.

The crux of petitioner's view is based upon section 117 (f). We have analyzed this statute, as well as the others involved, and the interesting question raised, with care, and we can not agree with the petitioner that section 117 (f) is altogether unambiguous in requiring the conclusion desired .by petitioner, that is, that amounts received from the retirement of bonds are capital gains. The section does not so state. It says nothing as to capital gain. It merely says that the amounts received by the holder upon bond retirement "shall be considered as amounts received in exchange therefor." Every exchange however does not result in capital gain. Such result requires an exchange of capital assets—which section 117 (f), at least, does not so denominate the bonds. Unless the amount is received in exchange for a capital asset, the income is ordinary. Obviously, we think, the section clearly requires interpretation before any conclusion can be reached that the gains from bond retirement are capital in nature, for we must first inquire whether the bonds, in this case, were capital assets. This point the petitioner assumes. We can not so do. Even if there is retirement (and the parties so agreed) and

even if there was exchange (and the section supplies that element), it must still be demonstrated before we can arrive at the capital gains desired by the petitioner that capital assets were exchanged. It is obvious that bonds are not always capital assets for in the hands of one who held bonds primarily for sale to customers in the ordinary course of his trade or business, they would, as is clear from section 117 (a) (1) (A), be excluded from the definition of "capital assets". We are therefore required in logic to examine the instant situation to see whether there is justification for the assumption that capital assets were exchanged, resulting therefore in capital gain.

What then was the nature of the bonds which were retired in 1944 as to whether they are capital assets or otherwise. It is true that under section 117 (a) (1) the term "capital assets" means "property held by the taxpayer" with certain exceptions, but under the ordinary rule of construing a statute in its entirety we can not be blind to the other subsections of section 117; moreover, a construction of the words "property held" is called for. Does the fact that the bonds here involved have been charged off on the taxpayer's books of account, with (so far as we are here concerned) tax benefit, mean either that the bonds were not "property held" by the petitioner in 1944 or that, when we consider other related parts of the general statute section 117 on the subject "Capital Gains and Losses," such gains and losses are not to be found in the bond retirement here at hand? Upon study of the entire statute and despite the generality of the definition of capital assets as meaning property held by the taxpayer and, further, despite the fact that the particular exceptions stated in section 117 (a) do not cover expressly the bonds here involved, we find in section 117 (i) particular reference to "Bond, Etc., Losses of Banks" and the statement therein that if losses from sales or exchanges by a bank of "bonds, debentures, notes, or certificates, or other evidence of indebtedness issued by any corporation * * * with interest coupons or in registered form, exceed the gains * * * from such sales or exchanges, no such sale or exchange shall be considered a sale or exchange of a capital asset." It is thus at once apparent that the petitioner being a bank we can not consider the exchange, i. e., the retirement of bonds, as an exchange of a capital asset if in the taxable year petitioner's losses from sales or exchanges, not only of bonds but of debentures, notes, certificates, or other evidence of corporate indebtedness, with interest coupons or in registered form, exceeded petitioner's gains from such sales or exchanges, and it is equally apparent that the record before us contains no showing as to whether the petitioner had net loss or net gain from all of such transactions. It can not, we think, be doubted that section 117 (i), relating to banks only, is more particular than section 117 (f)

and must take precedence over it. In the absence of the showing required by section 117 (i), we can not do what the petitioner desires us to do under section 117 (f), that is, can not consider that in the bond retirement there was an exchange of capital assets. Section 117 (i) specifically forbids that such an exchange "shall be considered a sale or exchange of a capital asset" if there was net loss from the sales or exchanges of bonds, notes, etc., listed therein. We must and do conclude, therefore, that on the record before us petitioner, a bank within section 117 (i), has failed to demonstrate application of the general provisions of section 117 (f). In so concluding we have not overlooked the fact that the respondent agrees that to the extent of $7,325 petitioner's receipts from bond retirement are to be treated as capital gain and that petitioner contends, therefore, that the respondent admits that the bonds are capital assets. We think this does not follow. Indeed, the fact that respondent's statement was limited to $7,325 is clear indication that no further admission was intended. Moreover, the $7,325 is the excess of receipts over petitioner's basis so it is apparent that the respondent is merely making no contention, as to that excess, such as he raises with reference to the amounts received, up to the amount of the basis, being ordinary income because of the previous charge-off with tax benefit. The $7,325 had not been charged off previously, the charge-off being only up to the amount of the base, $139,175 (as to the $146,500 in bonds). We consider that no admission governs the present question and that assuming that the $7,325 was capital gain, it does not follow that the same is true as to the balance of the amount charged off in previous years but recovered in the taxable year.

Moreover, in this connection section 23 (k) (2) of the Internal Revenue Code requires examination.[2] For it provides that if securities become worthless and are capital assets, the loss, to one *other than a bank* is to be regarded as loss from sale or exchange of capital assets. This indicates that in case of a bank, even if securities which are capital assets become worthless, deduction of ordinary loss shall be allowed. This language appears, at least for loss purposes, to require treatment of a bank's securities, if they become worthless, in a manner inconsistent with petitioner's contention that retirement of bonds, etc., require treatment of the amount received as in exchange

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

* * * * * * *

(k) BAD DEBTS.—

* * * * * * *

(2) SECURITIES BECOMING WORTHLESS.—If any securities (as defined in paragraph (3) of this subsection) become worthless within the taxable year and are capital assets, the loss resulting therefrom shall, in the case of a taxpayer other than a bank, as defined in section 104, for the purposes of this chapter, be considered as a loss from the sale or exchange, on the last day of such taxable year, of capital assets.

* * * * * * *

for the bond. If less than cost of the bonds was received on retirement, there would be loss, which to a bank, appears under section 23 (k) (2) *not* to be regarded as from sale or exchange of capital assets. The bank seems to be given the benefit of ordinary loss on worthlessness even of capital assets, which, in our view, subjects it to the general rule that a recovery of worthless debts is ordinary income. Moreover, we see in *National Bronx Bank of N. Y.* v. *Commissioner*, 147 Fed. (2d) 651, that if a bank *sells* bonds and claims loss, the loss is disallowed if it had been claimed and allowed in earlier years. There seems no real difference, to the bondholder, between retirement and receipt of proceeds, and sale and receipt of sales price. Assuming therefore that, as petitioner urges, moneys received on retirement of bonds are received in exchange therefor, the amount might be less than cost, and a loss therefore incurred, but under the cited case the previously claimed loss prevents a second allowance. If however there is gain, logic forbids that the previously allowed loss should be disregarded, as petitioner urges here.

Section 23 (k) (1) of the Internal Revenue Code is also of interest here, for it provides that except as to a bank, debts evidenced by securities may, though worthless, not be deducted, thus indicating that a bank can deduct worthless securities. This is emphasized by Regulations 111, sec. 29.23 (k)–4, which reads:

* * * A bank as defined in section 104 may deduct such uncollectible part of the debt even though the evidence of the debt is a security as defined in this section.

This clearly puts worthless bonds held by a bank in the category of worthless debts. Yet, contrary to petitioner's view, Regulations 111, sec. 29.23 (k)–1 (*b*)—on the subject of worthless debts in general, and after providing for their deduction, says:

* * * Any amount subsequently received on account of a bad debt * * * previously allowed as a deduction for income tax purposes, must be included in gross income for the taxable year in which received * * *.

Petitioner has not attacked this regulation.

Moreover, it is so well established as not to require extended citation of cases that if a loss is charged off in a previous year with tax benefit, the recovery of the amount thereof in a later year is in general taxable as ordinary income; *Askin & Marine Co.* v. *Commissioner*, 66 Fed. (2d) 776; *Rossin & Sons* v. *Commissioner*, 113 Fed. (2d) 652. The principle is fully applicable to banks. *Helvering* v. *State-Planters Bank & Trust Co.*, 130 Fed. (2d) 44; *Commissioner* v. *Liberty Bank & Trust Co.*, 59 Fed. (2d) 320; *Lake View Trust & Savings Bank*, 27 B. T. A. 290. The petitioner seeks to escape this general principle by reliance upon section 117 (f) of the Internal Revenue Code to the effect that upon the retirement of bonds, notes, etc., with interest coupons or

in registered form, the amounts received by the holder are to be considered as amounts received in exchange therefor. This the petitioner apparently considers sufficient to establish a difference between recoveries upon the bonds here charged off and other debts not within the classes named in section 117 (f), when so treated. Though of course not controlling, it is worthy of note that in none of the cases above cited, is there any suggestion that the conclusion that recoveries of worthless-charged-off debts are ordinary income is dependent upon their not having been bonds, notes, etc., with coupons or in registered form.

In *Putnam Nat. Bank* v. *Commissioner*, 50 Fed. (2d) 158, we find a case remarkably parallel to this one, for there the petitioner, a bank, had charged off and had been allowed as bad debt deduction $18,000 in bonds held by it, in 1921. The bonds, much as in this case, had been accepted in lieu of notes due and had been written off, in part, upon the order of the bank examiner. In 1925, the $18,000 was collected on the bonds. The Commissioner required petitioner to return the amount as taxable income and was upheld by the Board of Tax Appeals. Upon appeal, the Circuit Court of Appeals, citing a number of cases, said, in part:

It seems to be taken for granted, as indeed it must be, that, if the 1921 deduction was properly claimed and allowed; that is, if in law and in fact the bonds were in that year ascertained to be to that extent worthless, any later collection of such debt must be returned as income. * * *

Candor requires us to note that the case had been pitched upon the proposition that the debt had not, in fact, been determined to be worthless and loss had not occurred in 1921 so that money received in 1925 was not income but merely payment of the principal due on the debt, which facts were resolved against the petitioner. Nevertheless it is apparent that it was the settled opinion of the Court that later recovery on bonds marked off must be returned as income and that the opposite conclusion, contended for here, would have required a different conclusion on the part of the Court, for the petitioner's view here would, if applied in that case, make it immaterial whether there had been debt charged off in the previous years, because it was on bonds.

In *Commissioner* v. *First State Bank of Stratford*, 168 Fed. (2d) 1004, the Court considered a question somewhat different from the one here involved yet, on principle, throwing light upon this one. Tax benefit had been obtained by a bank through deduction for bad debts represented by certain notes. Later the bank distributed the notes as a dividend in kind to stockholders. It was held that the situation was different from the ordinary distribution in kind and that the bank had merely distributed a right to income, and it was therefore taxable when in the same year recoveries were made by the stockholders upon the

notes.  The Court in arriving at that conclusion, as to the part pertinent here, said that it is well settled that when deduction for tax purposes is taken and allowed for debts deemed worthless, recoveries thereon in a later year constitute taxable income to the extent of tax benefit received from the deduction taken.  The Court then added:

\* \* \* Thus, when the tax benefit for a bad debt is obtained, the debt loses its nature as capital, and becomes representative of that portion of the taxpayer's income which was not taxed. \* \* \*

Later the Court added:

\* \* \* In this case, the charged-off debts no longer represented an asset except in the sense that any vested right to receive income is an asset; the notes had a basis of zero, and were no longer reflected in the capital structure of the corporation.  They merely represented potential income to the extent of the tax deduction previously allowed.

Still later the Court also notes:

The notes were assets of the bank, and subject to transfer as other property, but they were not capital assets for income-tax purposes. \* \* \*

*National Bank of Commerce of Seattle* v. *Commissioner,* 115 Fed. (2d) 875, involved a situation where debts considered worthless were charged off by banks and deductions claimed.  The banks conveyed their assets to petitioner which assumed all their liabilities.  In a later year the petitioner made recovery on some of the debts but for its income tax return claimed that such recoveries were not income but return of capital.  Deficiency was determined on the theory that the recoveries were income.  The Court said:

\* \* \* However, when such a loan becomes worthless, the amount thereof is loss of capital, but the income tax laws permit the bank to recoup its capital by deducting from the profits or income the amount of the loss.  Thus the bank does not pay a tax on all its income, but on the amount of income less the loss on the worthless debt.  The debt itself then loses its nature as capital, but represents that portion of the income which was not taxed, and the capital is the money taken from the profits or income.  If the loan, after being deducted from income, is paid, then the lender is receiving profit or income—otherwise the lender would double its capital on one transaction.  In other words, the profits or income used to pay back the capital when the debt is charged off is represented by the worthless loan, so that when such loan is paid the profits are replaced.

\* \* \* Having been charged off, such loans had no cost basis at all.  The smaller banks had recouped their cost or capital from income.  The loans were no longer a capital asset but represented income. \* \* \*

Recently in *Merchants National Bank of Mobile,* 14 T. C. 1375, we had occasion to consider a bank which had charged off notes as bad debts and received tax benefit.  In a later year the bank assigned the notes for a consideration.  We held that the amount received upon the assignment of the notes was taxable as ordinary income.  We

relied upon *Commissioner* v. *First State Bank of Stratford*, *supra*, and *National Bank of Commerce of Seattle* v. *Commissioner*, *supra*. With reference to the petitioner's attempt to distinguish those cases upon the ground that the payments there were made by the debtors and therefore the income was not received out of sale to a third party, we stated that we were unable to agree with the point, and added:

* * * The notes here ceased to be capital assets for tax purposes when they took on a zero basis as the result of deductions taken and allowed for charge-offs as bad debts.

Considering the matter realistically, as we must, petitioner recovered a portion of the amount that had previously reduced ordinary taxable income and the amount can not effectively offset the advantage so obtained without according it like treatment. * * * The substance of the transaction was a recoupment of ordinary income which had escaped taxation by bad debt deductions.

In *Commissioner* v. *Liberty Bank & Trust Co.*, *supra*, the bank had charged off and reported certain debts as worthless and due allowance for the debts was made by the Commissioner in the assessment of taxes. In later years they were paid and the Commissioner treated the amounts received as gross income. The taxpayer contended that equitable estoppel was not involved as contended by the Commissioner and that even if it was "the debts when collected were not income, but were return of capital." The Court concluded that the taxpayer was estopped to deny that the debts were worthless and to be charged off. The Court was of the opinion, regardless of estoppel, that "the amounts received in payment of the debts were chargeable to gross income for the years in which they were received." The Court applied the principles of *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359, and held that the recovery of the debts for which deductions were allowed in former years should be credited to gross income.

We note that in *Helvering* v. *State-Planters Bank & Trust Co.*, *supra*, the Court concludes that "the taxpayer elects, by charging off the debt, to eliminate it as a capital item and treat any possible collection of it as income"; and again that the Court says: "* * * We think that the taxpayer by charging it off has elected to eliminate it as capital and to treat any subsequent collection made on it as income * * *." Election seems logically as applicable to bonds as to ordinary notes or debts.

In the light of the above, we are of the opinion that section 117 (f) does not except the petitioner from the general rule above referred to, for after the charge-off with tax benefit the bonds ceased for income tax purposes to be capital assets of the petitioner. Section 117 (f), it seems to us, is directed to and covers only the usual retirement of bonds and can not be considered to govern the present situation where the bonds have been previously charged off with tax benefit; moreover, since they represented no capital asset for income tax purposes, their

retirement or exchange for money was not an exchange of capital assets resulting in only capital gain. We conclude and hold that there was no error on the part of the Commissioner in including the amounts received to the extent of $58,117.73 in petitioner's taxable income.

This conclusion renders it unnecessary to discuss the contention that the bonds were, in effect, a continuation of the indebtedness to the petitioner preceding their acquisition. Nor need we discuss the $7,325 excess of recovery over petitioner's original base since the parties agree that that amount is capital gain.

Reviewed by the Court.

*Decision will be entered for the respondent.*