Dennis M. O'CONNOR and Katherine O'Connor, Independent Executors of the Estate of Thomas O'Connor, Deceased, and Dennis M. O'Connor, Katherine O'Connor, Mary O'Connor Braman, joined herein by her husband, D. H. Braman, and Thomas O'Connor, Jr.

v.

Frank SCOFIELD, Former Collector of Internal Revenue.

Civ. A. 824.

United States District Court W. D. Texas, Austin Division.

March 28, 1956.

J. P. Jackson of Robertson, Jackson, Payne, Lancaster & Walker, Dallas, Tex., for plaintiffs.

Andrew D. Sharpe, Charles Mehaffy, Dept. of Justice, Washington, D. C., Russell B. Wine, U. S. Atty., San Antonio, Tex., Lonny F. Zwiener, Asst. U. S. Atty., Austin, Tex., for defendant.

RICE, District Judge.

This case arises under the provisions of the Internal Revenue Code of 1939, 26 U.S.C.A. § 1 et seq. It involves income taxes together with interest paid by the Estate of Thomas O'Connor, Deceased, for the taxable year ended November 30, 1948.

The above-entitled action was tried without jury by the Court in San Antonio, Texas, on November 4, 1955.

The question involved in the case is as follows:

Were the plaintiffs taxable at long term capital gain rates or at ordinary income rates on the gain realized from the sale of an oil payment during the fiscal year ended November 30, 1948, to D. E. Blackburn?

The Court having considered the oral testimony, stipulated facts and the briefs of counsel and being fully advised otherwise in the premises, makes and enters the following findings of fact and conclusions of law.

Findings of Fact

1. Thomas O'Connor died testate in Victoria County, Texas, on December 5,

1946. Plaintiffs Dennis M. O'Connor and Katherine O'Connor, duly qualified as Independent Executors of the Estate of Thomas O'Connor, Deceased, and are now acting in such capacity. Plaintiffs Dennis M. O'Connor, Katherine O'Connor, Mary O'Connor Braman and Thomas O'Connor, Jr. are the sole heirs at law and devisees under the will of Thomas O'Connor, deceased. D. H. Braman is the husband of Mary O'Connor Braman.

2. In the fiscal year of the Estate ended November 30, 1948, to wit, on November 26, 1948, the Executors of the Estate transferred, by general warranty deed, certain royalty interests (subject to a reversionary interest, as hereinafter stated) to D. E. Blackburn of Victoria, Texas, for the cash consideration of $9,990,-350. The deed making such transfer was delivered to D. E. Blackburn and duly recorded in the Deed Records of Refugio County, Texas, with some $10,-000 in documentary stamps having been attached to the deed. Expenses attributable to the sale amounted to $10,-990. The royalty interests sold to Blackburn had been held by decedent and subsequently by his Estate for many years. The properties sold to Blackburn had been held by plaintiffs in excess of six months.

3. If the gain from the transaction in question is properly taxable as income on the sale of a capital asset held for more than six months, and not as ordinary income, the basis for computing such gain is $1,925,105.81.

4. The above mentioned transaction was consummated on November 26, 1948 and was carried out in accordance with its terms. Blackburn, as owner of the royalty interest, received the money from the companies running the oil from the properties, pursuant to transfer orders executed by plaintiffs to the respective pipe line companies.

5. The deed above referred to provided that after the royalties described therein had produced sufficient oil to pay the purchaser, D. E. Blackburn, the sum of $10,000,000.00 (with interest as computed thereon at the rate of 4% per annum), the properties would revert to the grantors. The aforesaid amount was duly received by Blackburn from said properties during the period beginning January 28, 1949 and ending December 24, 1951. Upon receipt of this amount, Blackburn, the purchaser, pursuant to the provisions in the deed, executed his quitclaim deed, reconveying the royalties to the Estate, which quitclaim was duly recorded in the Deed Records of Refugio County, Texas.

6. Both the sellers and the buyer (D. E. Blackburn) intended the transaction in question to be a sale and purchase of the royalty interests in question. They did not intend to enter into a loan or a mortgage transaction. At no time did the Executors, individually, or in their fiduciary capacity, make any guaranty or agreement to indemnify the purchaser or enter into agreements with the purchaser other than the agreement to sell, as set forth in the deed. At all times, the risks incident to the presence and production of sufficient quantities of oil to make the transaction profitable for the purchaser were upon the purchaser. The purchaser, D. E. Blackburn, borrowed the purchase money from Chase National Bank of New York, giving his note and a deed of trust on the properties purchased by him. The bank dealt only with Blackburn and looked only to him. The plaintiffs did not have anything to do with Blackburn's bank loan. The transaction in question was real and bona fide and was, in no sense, a sham or a subterfuge. Blackburn made a substantial profit on the transaction and reported and paid tax on his profit.

7. The purpose of the sale of the oil payment was a bona fide business purpose, to wit, to raise money to pay federal estate taxes and state inheritance taxes due by reason of the death of Thomas O'Connor, deceased, and to pay administration expenses of the Estate. The Estate was in need of cash resources with which to pay these charges and for these reasons the oil payment was sold.

8. The sale in question was the first and only sale of oil payments or other

mineral interests that the Estate had made until that time. Neither the decedent, Thomas O'Connor, nor his Estate, was in the business of selling oil payments or other mineral interests. The limited royalty interests, the oil payment in question, was not held primarily for sale to customers.

9. The oil payment "paid out" after three years of production, during which the properties were owned by Blackburn. The oil payment would have taken an appreciably longer period to pay out had it not been for the fact that there was an increase in the production in the field by the operating lessees and had it not been for the further fact that there had been a substantial increase in the price of oil shortly prior to the sale of the oil payment, which higher price was maintained during the period of the pay-out.

10. The royalty interest (or oil payment) sold to Blackburn represented a substantial part of the plaintiffs' oil in place. Also, in terms of the relative values of the interest sold and of the reversionary interest retained by the sellers, the transfer represented a substantial part of the sellers' royalty interest.

11. The Executors of the Estate of Thomas O'Connor, Deceased, filed a fiduciary income tax return for the fiscal period ended November 30, 1948, reporting the gain on the sale as ordinary income. This gain was reported as ordinary income because of the ruling of the Commissioner of Internal Revenue, published in 1946, requiring such gain to be so reported. Thereafter, a timely claim for refund was filed, which was rejected (except as to a minor item not here involved), notification of such rejection being received in a registered letter dated March 12, 1953, and subsequently, this suit was brought within the time prescribed by the Internal Revenue Code.

12. There was probable and reasonable cause for the acts done by Frank Scofield, the former Collector of Internal Revenue, acting pursuant to the orders and directions of the Commissioner of Internal Revenue.

## Conclusions of Law

1. This Court has jurisdiction of the subject-matter of and the parties to this case.

2. The transaction with D. E. Blackburn was a bona fide sale.

3. The sale to Blackburn was a sale of a royalty interest·in producing oil properties in Texas, subject to a reversion to plaintiffs after the royalties had produced in Blackburn's hands the prescribed amount. This was a sale of what is commonly called an oil payment. This oil payment was a real property interest under the law of Texas and, under the tax laws, a property interest in oil in place. The transaction was not intended to be and was not, as a matter of fact or a matter of law, an assignment of income, but was the sale of a property interest to Blackburn, which property interest produced income in the hands of Blackburn. This property interest was substantial and real, representing a substantial part of the grantors' royalty interest. The property so sold was a long-lived, and not a short-lived, oil payment.

4. The property interest so sold to Blackburn was a capital asset as defined in Section 117 of the Internal Revenue Code of 1939, and this capital asset had been held by plaintiffs for more than six months.

5. None of the exceptions in Section 117 or elsewhere in the Internal Revenue Code, denying a transaction long term capital gain treatment, are applicable to the instant transaction.

6. Plaintiffs are entitled to receive long term capital gain treatment under Section 117 on the sale of the oil payment in question to Blackburn.

7. Judgment shall be entered for the plaintiffs. By reason of the probable cause for the acts of the Commissioner or other officials of the Treasury Department, as found by the Court, the judgment, on becoming final, shall be provided for and paid out of the proper appropriations from the Treasury of the United States.