**HALLCRAFT HOMES, INC., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 18883.**

United States Court of Appeals
Ninth Circuit.

Sept. 11, 1964.

---

F. Edward Little, J. Keith McGregor, Los Angeles, Cal., for petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen., William A. Geoghegan, Asst. Deputy Atty. Gen., Lee A. Jackson, David O. Walter, Fred R. Becker, Dept. of Justice, Washington, D. C., for respondent.

Before ORR, BARNES and JERTBERG, Circuit Judges.

BARNES, Circuit Judge.

Petitioner petitions for a review of the decision of the Tax Court holding that a lump sum payment received by petitioner for the transfer of waterline refund agreements to the City of Phoenix was taxable as ordinary income rather than as capital gain. 40 T.C. 199. This court has jurisdiction of the petition pursuant to 26 U.S.C. § 7482 (§ 7482 of the Internal Revenue Code of 1954.) All references to sections are to sections in that Code, unless otherwise noted.

The facts are not in dispute. Taxpayer is a subdivider and land developer. In the mid-1950's it was necessary for taxpayer to advance, or *loan,* many thousands of dollars to certain local water companies under water refund agreements. These agreements provided that the taxpayer was making these payments to pay for the installation of water lines, meters, etc., into the houses being built in the subdivisions. The payments were to be paid back as a percentage of the receipts of the water companies from the newly expected water users. The payments were to carry no interest, and if the payments had not been paid back within twenty years, the companies were to pay the remainder to the taxpayer in a lump sum.

In 1957 the City of Phoenix was negotiating for and ultimately did purchase the water companies, including their liabilities. The City approached taxpayer, proposing to purchase the water refund agreements—in effect proposing to pay for their cancellation. The taxpayer agreed, and on March 31, 1958 received a lump sum payment totalling about fifty per cent of the total amount ultimately to be due under the contracts.

The taxpayer had deducted its payments to the water companies from its gross income in arriving at its taxable ordinary income, in accordance with the decision in Albert Gersten, 28 T.C. 756 (1957), and the acquiescence therein, 1958–1 Cum.Bull. 4, modified and remanded on other grounds, 9 Cir., 267 F.2d 195. Upon receipt of refunds, the taxpayer had included the refunds in its yearly tax returns as ordinary income, *including at least three years subsequent to 1958*—the year of the sale.

Taxpayer conceded before the Tax Court that if the refunds from the water companies were received over a period of years, the receipt would be taxable

as ordinary income (40 T.C. at 205). Indeed, taxpayer has reported all such receipts (whether received before or after this disputed item) as ordinary income. The only question then is whether a lump sum received in the "sale" of the right to receive such future income is taxable as ordinary income or as capital gain.

Basically, we believe the case is controlled by three cases: Hort v. Commissioner, 1941, 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168; Commissioner v. P. G. Lake, Inc., 1958, 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743, reh. den. 356 U.S. 964, 78 S.Ct. 991, 2 L.Ed.2d 1071; and Holt v. Commissioner, 9 Cir., 1962, 303 F.2d 687.

In Hort v. Commissioner, supra, the taxpayer was lessor of a building on a fifteen year lease. With nine years left on the lease, the lessee found it unprofitable to maintain a branch in petitioner's building. After some negotiations, the petitioner and the lessee agreed to cancel the lease in consideration of a payment to petitioner of $140,000.00. The taxpayer contended, inter alia, that the amount was capital gain rather than ordinary income. The Supreme Court disagreed, saying:

"Where, as in this case, the disputed amount was essentially a substitute for rental payments which § 22(a) expressly characterizes as gross income, it must be regarded as ordinary income, and it is immaterial that for some purposes the contract creating the right to such payments may be treated as 'property' or 'capital'." (313 U.S. at 31, 61 S.Ct. at 758).

In Commissioner v. P. G. Lake, Inc., supra, the taxpayer assigned a right to receive future royalty income in return for cancellation of a debt. The Supreme Court held this to be ordinary income rather than capital gain, stating:

"The substance of what was assigned was the right to receive future income. The substance of what was received was the present value of

income which the recipient would otherwise obtain in the future. In short, consideration was paid for the right to receive future income, not for an increase in the value of the income-producing property." (356 U.S. at 266, 78 S.Ct. at 695).

In Holt v. Commissioner, supra, taxpayer, a motion picture producer, had a contract with a movie studio whereby the taxpayer was to receive, inter alia, a certain percentage of the excess gross receipts from the pictures he produced. It became apparent to the studio that the type of picture produced by taxpayer was decreasing in public demand. In return for the extinguishment of the agreement, the studio paid taxpayer a large lump sum. The court characterized this sum as nothing other than the price of the right to receive future excess gross profits. Since the receipt of such profits by the taxpayer would normally have been ordinary income to him, the court concluded that the lump sum payment was for the right to receive future income and was taxable at ordinary income rates.

On the basis of these three cases, we think we must, and we do hold that the lump sum received by the taxpayer in the sale of the water refund agreements is taxable at ordinary income rates.

The taxpayer advances four possible reasons for holding that the lump sum is taxable at capital gains rates.

(1) Taxpayer points out that a literal reading of the statutory definition of a capital asset contained in § 1221 would include the "right" it sold here. That is true, but that argument has not been successful in this court or the Supreme Court. Cf. Roth v. Commissioner, 9 Cir., 1963, 321 F.2d 607, 609 and cases there cited. The federal courts have not felt bound by the literal words of the statutory definition.

(2) Taxpayer emphasizes its good faith. It points out that the Commissioner and the Tax Court agree that taxpayer did not here have as its dominant motive the avoidance of ordinary

income rates. The taxpayer had other, perhaps compelling, reasons for selling these refund agreements to the City of Phoenix. Thus, argues the taxpayer, the loophole closing principles of the assignment of income cases are inapplicable to this situation.

The assignment of income cases have not been confined only to what taxpayer characterizes in his Reply Brief, p. 5, as "*specialized factual situations,* \* \* \* [which] are *corrective decisions* designed to frustrate and discourage the inventive genius of tax-motivated sophisticates who are perpetually intrigued with the exploitation of capital gain." [Emphasis taxpayer's]. For example, the taxpayers in the following cases were apparently acting in complete good faith, yet were taxed at ordinary income rates. Hort v. Commissioner, supra, Holt v. Commissioner, supra, Bidart Bros. v. United States, 9 Cir., 1959, 262 F.2d 607, cert. den. 359 U.S. 1003, 79 S.Ct. 1141, 3 L. Ed.2d 1031. Taxpayer urges, as showing good faith, (a) that it did not wish to antagonize the City of Phoenix fathers, and (b) it needed cash. In Holt, the lessee wanted out of the lease. In Hort, the future did not look bright for the taxpayer's possible future productions so the studio wanted out of the contract. In Bidart Bros., the taxpayer was retiring from the farming business. We cannot agree with taxpayer's position.

■ (3) Taxpayer points out that the assignment of income cases *often* are aimed at situations where a taxpayer assigns his right to future payments a few days or weeks before he is to receive it; whereas here the income might not otherwise have been received for almost 20 years. In Commissioner v. P. G. Lake, Inc., the Supreme Court did point out:

"At the time of the assignment it could have been estimated with reasonable accuracy that the assigned oil payment right would pay out in three or more years. It did in fact pay out in a little over three years." (356 U.S. at 262, 78 S.Ct. at 693.)

However, there is no indication in Commissioner v. P. G. Lake, Inc. that a short period for the alternate normal realization of the income is necessary for the application of the assignment of income doctrine. The first quotation from the Lake case, supra, points out that the substance of the transaction is the assignment of future income. This is the factor entitled to the greatest weight. In the Hort case the court stated that the receipt for the cancellation of the lessor's interest with *nine years* to go on the lease was subject to ordinary income rates. In Holt the period of years in which the taxpayer-producer would receive income from motion pictures produced by him was at least uncertain. And in United States v. Eidson, 5 Cir., 1962, 310 F.2d 111, modified on other grounds, 312 F.2d 744, the taxpayer was taxed at ordinary income rates on the sum received for the sale of a contract right with *seven years* left to go on the contract.

■ (4) Taxpayer points out that the amount of income it was to receive in any one year was quite uncertain, depending on the receipts of the water companies from its customers. The Supreme Court in the Lake case *did* point out the certainty of the income:

"We do not see here any conversion of a capital investment. The lump sum consideration seems essentially a substitute for what would otherwise be received at a future time as ordinary income. The pay-out of these particular assigned oil payment rights could be ascertained with considerable accuracy. Such are the stipulations, findings, or clear inferences. In the O'Connor case [D.C., 143 F.Supp. 240] the pay-out of the assigned oil payment was so assured that the purchaser obtained a $9,990,350 purchase money loan at 3½ percent interest without any security other than a deed of trust of the $10,000,000 oil payment right, he receiving 4 percent from the taxpayer." (356 U.S. at 265, 78 S.Ct. at 694)

Again, we do not see that this statement is entitled to any greater weight than the statement of the same Court first quoted, supra. Further, it can hardly be said here that the ultimate receipt of the income was uncertain. The debtors were public utilities, companies whose financial stability is ordinarily such that one can expect that they would pay their bills. Moreover, since all the homes in the tracts affected by the refund agreements had been sold several months prior to the taxpayer's agreement with the City of Phoenix, the amount of refunds the taxpayer could expect to receive each year could seemingly be estimated with comparative accuracy. Furthermore, the amount the taxpayer was to receive in Holt in any one year was much more uncertain than amounts due herein, yet the taxpayer was taxed at the ordinary income rates on the amount received from the cancellation of the right to receive such future amounts. The argument here made was apparently not made in the Holt case. That could mean the Holt case is not binding on this court in this case. But it also indicates a possible lack of merit in the argument. We can understand the taxpayer having more reason to sell or cancel the right to receive future income if the amount he is to receive in any one year is uncertain (even though ultimate payment is quite likely because the debtor is a public utility). However, we do not see why it follows that the payment should be taxed at capital gain rates rather than as ordinary income. Such reasoning could open a big loophole for those persons who have present rights to future income but no certainty as to the amount of that income in any one year.

Two theories other than the assignment of income cases have been cited by the Government in support of the conclusion reached by the Tax Court.

One theory is that used in National Bank of Commerce v. Commissioner, 9 Cir., 1940, 115 F.2d 875 and Merchants Nat'l Bank v. Commissioner, 5 Cir., 1952, 199 F.2d 657. In those cases, the courts held that where a taxpayer has deducted bad debts from his gross income in one year and obtains payment of these debts in a subsequent year, the sums obtained must be added to ordinary income for that year. Those cases make it easier for the parties and the courts to conclude that the taxpayer here would have been taxed at ordinary rates if he received the water refund payments over a period of years. They do not aid us in determining whether the receipt of a lump sum payment in lieu of future ordinary income is taxable as ordinary income or capital gain, except that in Merchants National Bank the amount deemed ordinary income was a lump sum payment received in the sale of the accounts receivable deducted in earlier years as bad debts.

The second theory is that used in Corn Prods. Ref. Co. v. Commissioner, 1955, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29, reh. den. 350 U.S. 943, 76 S.Ct. 297, 100 L.Ed. 823. There the court held that where a taxpayer purchased and sold corn futures as an integral part of its manufacturing business to protect itself against a rise in the price of corn, gains and losses from such sales and purchases gave rise to ordinary income and ordinary losses. It is true that the taxpayer in the case at bar entered into water refund agreements as an integral part of its business. Yet it cannot be said as clearly that it sold such agreements as an integral part of its business. The sale to the City of Phoenix here was "the only occasion on which petitioner transferred its right to receive refunds from the water companies." [Tax Court Opinion, Tr. 27] Since the sale was made in good faith in the furtherance of the business, and since the agreements were entered into as an integral part of the business of the taxpayer, the "integral part of the business" theory of Corn Products might very well be compelling and controlling here. Yet we need not so decide, and do not, for the assignment of income cases quite clearly lead us to the conclusion that the gain here is taxable as ordinary income.

We note, in passing, that the taxpayer has not cited a single case finding for the taxpayer on an issue and fact situation similar to the one at bar. The taxpayer's argument is ingenious, but has no support in case law.

We affirm the Tax Court.