DAVID BRESLER AND ESTATE OF SYLVIA BRESLER, DECEASED, DAVID BRESLER, EXECUTOR, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8199-72.    Filed October 29, 1975.

*Sidney J. Matzner,* for the petitioners.
*James J. Posedel,* for the respondent.

OPINION

SIMPSON, *Judge:* The Commissioner determined a deficiency in the petitioners' Federal income tax for the taxable year 1967 of $15,193.96. The principal issue to be decided is whether the portion of the proceeds of a settlement allocable to damages resulting from the sale of poroperty used in a trade or business described in section 1231 of the Internal Revenue Code of 1954 [1] is to be reported as ordinary income or long-term capital gain. It is also necessary to decide how the remaining portion of the

---

[1] All statutory references are to the Internal Revenue Code of 1954 as in effect for the years in issue.

proceeds of the settlement are to be allocated among other claims for damages.

All of the facts have been stipulated, and those facts are so found.

The petition herein was filed by David Bresler and Sylvia Bresler, his wife, who, on the date of the filing of such petition, resided in Palm Springs, Calif. They filed their joint Federal income tax return for 1967, using the cash method of accounting, with either the District Director of Internal Revenue, Los Angeles, Calif., or with the Internal Revenue Service Center, Ogden, Utah. Mr. Bresler will sometimes be referred to as the petitioner.

Since the filing of the petition, Mrs. Bresler has died, and Mr. Bresler has been appointed executor of her estate. The Estate of Sylvia Bresler, David Bresler, executor, has been substituted for Mrs. Bresler in this case.

Best Ice Cream Co. (Best) was a corporation engaged in the ice cream business in southern California. It had duly elected to be taxed as an electing small business corporation within the meaning of section 1371(b) during the period in issue. The petitioner owned 39 percent of its stock.

On its 1964 Federal small business corporation income tax return, Best reported a net operating loss of $894,756. Of such amount, $729,584 resulted from the loss incurred on the sale of "property used in the trade or business" as defined in section 1231(b) (section 1231 property). The petitioner's pro rata share of such loss, determined pursuant to section 1374, was $348,955. Due to the basis limitation provided in section 1374(c)(2), the petitioner deducted $291,714 as his portion of Best's net operating loss. Such deduction reduced the petitioner's ordinary income in 1964.

In June 1964, Best commenced an action against a competitor for alleged violations of various Federal antitrust provisions. In its complaint, it requested damages of $3,375,000, allocating such damages as follows:

| | |
|---|---|
| Loss of profits | $53,206 |
| Loss of value of business as a going concern: | |
|     Capital stock | 180,000 |
|     Paid-in surplus | 100,283 |
|     Restrictive covenant | [2] 61,927 |

[2] Although the parties stipulated that the loss alleged for the restrictive covenant was $61,972, the complaint clearly shows that the stipulated amount is erroneous.

| | |
|---|---|
| Loss on forced sale of assets _____ | 729,584 |
| Total damages _____ | 1,125,000 |
| Treble damages _____ | 3,375,000 |

In July 1967, the antitrust suit, together with a counterclaim and cross-complaint, was settled. As a result of the settlement, all claims, counterclaims, and cross-complaints were discontinued. While all parties expressly denied any liability, Best was paid $150,000. In the settlement agreements, such payment was not allocated to any specific loss claimed by Best. After allowing for attorneys' fees and costs, Best reported long-term capital gain of $101,360 for the "settlement of lawsuit for damages for loss of goodwill" on its 1967 Federal small business corporation income tax return. No other long-term capital gain was reported. Because of other deductions, it reported income of $96,887 for 1967.

On their joint Federal income tax return for 1967, the petitioners reported Mr. Bresler's pro rata share of Best's income, $37,786, as long-term capital gain. The Commissioner determined that such share should be reported as ordinary income.

Since Best elected to be taxed as a small business corporation throughout the period in question, the character of the gain realized when Best received the antitrust suit settlement determines the character of the gain to be recognized by the petitioner. Sec. 1375(a); sec. 1.1375-1(d), Income Tax Regs.; see *William B. Howell,* 57 T.C. 546 (1972).

The taxability of the proceeds received in settlement of an antitrust action is dependent upon the nature of the claim for damages and the actual basis of recovery. To the extent that they represent lost profits, such proceeds are taxable as ordinary income. However, if they represent damages for injury to capital assets, they are taxable as capital gain, to the extent of any excess over basis. *Sager Glove Corp.,* 36 T.C. 1173 (1961), affd. 311 F. 2d 210 (7th Cir. 1962), cert. denied 373 U.S. 910 (1963); *Estate of Mabel K. Carter,* 35 T.C. 326 (1960), affd. 298 F. 2d 192 (8th Cir. 1962), cert. denied 370 U.S. 910 (1962); *Ralph Freeman,* 33 T.C. 323 (1959); cf. *United States v. Safety Car Heating & Lighting Co.,* 297 U.S. 88 (1936); *Phoenix Coal Co. v. Commissioner,* 231 F. 2d 420 (2d Cir. 1956), affg. a Memorandum Opinion of this Court; *Ellis D. Wheeler,* 58 T.C. 459 (1972); *Big Four Industries, Inc.,* 40 T.C. 1055 (1963);

*Raytheon Production Corp.,* 1 T.C. 952 (1943), affd. 144 F. 2d 110 (1st Cir. 1944), cert. denied 323 U.S. 779 (1944). Thus, we must determine what damages incurred by Best were actually compensated by the settlement. *Sager Glove Corp., supra; Raytheon Production Corp., supra.*

The petitioner first argues that the major portion of the settlement was to reimburse Best for the loss incurred when it sold its section 1231 property in 1964 and that such portion is taxable as capital gain and not ordinary income. Such argument rests on the applicability of the *Arrowsmith* doctrine.

In *Arrowsmith v. Commissioner,* 344 U.S. 6 (1952), the taxpayers received in 1937 through 1940 distributions from a corporation in the process of liquidation and reported such distributions as capital gains. In 1944, they were required to satisfy a judgment against the corporation and treated the amounts so paid as ordinary losses. The Supreme Court held that since the losses were integrally related to the prior capital gain, the losses became capital losses. The Court said at pages 8-9:

It is not even denied that had this judgment been paid after liquidation, but during the year 1940, the losses would have been properly treated as capital ones. For payment during 1940 would simply have reduced the amount of capital gains taxpayers received during that year.

It is contended, however, that this payment which would have been a capital transaction in 1940 was transformed into an ordinary business transaction in 1944 because of the well-established principle that each taxable year is a separate unit for tax accounting purposes. But this principle is not breached by considering all the 1937-1944 liquidation transaction events in order properly to classify the nature of the 1944 loss for tax purposes. Such an examination is not an attempt to reopen and readjust the 1937 to 1940 tax returns, an action that would be inconsistent with the annual tax accounting principle. [Citations omitted.]

In *United States v. Skelly Oil Co.,* 394 U.S. 678, 685 (1969), the Court explained the theory of *Arrowsmith:*

The rationale for the *Arrowsmith* rule is easy to see; if money was taxed at a special lower rate when received, the taxpayer would be accorded an unfair tax windfall if repayments were generally deductible from receipts taxable at the higher rate applicable to ordinary income. The Court in *Arrowsmith* was unwilling to infer that Congress intended such a result.

Applying such approach, the Court in *Skelly Oil* held that since the taxpayer was only required to pay taxes on 72½ percent of its income due to the percentage depletion allowance, only 72½

percent of the amount later refunded by the taxpayer was deductible.

This case represents the converse of *Arrowsmith.* However, we have previously held that the principles of *Arrowsmith* apply when a gain, instead of a loss, occurred in a later year. *Alvin B. Lowe,* 44 T.C. 363 (1965); see *Arrowsmith v. Commissioner,* 344 U.S. at 11-12. The property sold by Best in 1964 consisted of section 1231 property, not an ordinary capital asset, but we have previously applied the principles of *Arrowsmith* to the sale or exchange of section 1231 property. *Rees Blow Pipe Manufacturing Co.,* 41 T.C. 598 (1964), affd. per curiam 342 F. 2d 990 (9th Cir. 1965); see also *John E. Turco,* 52 T.C. 631 (1969); *Estate of James M. Shannonhouse,* 21 T.C. 422 (1953); Rev. Rul. 67-331, 1967-2 C.B. 290.

The parties agree that *Arrowsmith* applies, but they disagree over how it is to be applied to the facts of this case. According to the petitioner's view, *Arrowsmith* requires us to consider the events in 1964 for the purpose of ascertaining that the income in 1967 is related to a transaction which constituted a sale of section 1231 property, but he argues that the events of 1964 have no further relevancy and that the taxability of the payment in 1967 should be determined by reference to other transactions in that year. See Rabinovitz, "Effect of Prior Year's Transactions on Federal Income Tax Consequences of Current Receipts or Payments," 28 Tax L. Rev. 85, 101-104 (1972). In our judgment, his view of *Arrowsmith* is too narrow and not supported by the opinion of the Court in that case or by the subsequent opinion of the Court in *Skelly Oil.* In *Arrowsmith,* the Court indicated that the tax consequences of the payment in the later year should be determined by reference to the events in the earlier year. There is nothing to indicate that the earlier years should be considered for some purposes but not for all purposes. In *Skelly Oil,* the Court understood *Arrowsmith* to involve an examination of the tax consequences of the receipt of income in the earlier year and to take those tax consequences into consideration in determining the taxation of the payment in the later year. According to *Arrowsmith* and *Skelly Oil,* the most appropriate tax treatment of the transaction in the later year is obtained by examining the circumstances surrounding the related transaction in the earlier year, because of the relationship between the transactions, and it

is immaterial whether such a result favors the taxpayer or the Government.

Best reported an ordinary loss in 1964 when it sold its section 1231 assets.[3] If it had received the antitrust settlement in that year, any portion representing compensation for the loss on the sale of its section 1231 property would have merely reduced its ordinary loss since the losses from the sales or exchanges of section 1231 assets would have exceeded the gains from such sales or exchanges including such compensation. *Arrowsmith* requires that the gain realized in 1967 be treated in the same manner as if it had been received in 1964.

Since the gain, if received in 1964, would have resulted in an increase in ordinary income, it is not transformed into capital gain by a mere delay in receipt. The subsequent gain is part and parcel of the original loss transaction and cannot be segregated for tax purposes. The gain in 1967 is merely an adjustment of the prior sale price; it is not a new and independent sale or exchange of section 1231 property. See *Arthur H. DuGrenier, Inc.*, 58 T.C. 931, 939 (1972). The receipt of the payment in 1967 was merely the completion of a prior transaction. *Arrowsmith* requires us to treat both events as a unified transaction. See *United States v. Skelly Oil Co.*, 394 U.S. at 685; cf. *Connery v. United States*, 460 F. 2d 1130 (3d Cir. 1972); *Dynamics Corporation of America v. United States*, 449 F. 2d 402 (Ct. Cl. 1971); *Citizens Federal S. & L. Assn. of Cleveland v. United States*, 290 F. 2d 932 (Ct. Cl. 1961); *Hallcraft Homes, Inc.*, 40 T.C. 199 (1963), affd. 336 F. 2d 701 (9th Cir. 1964); *Merchants National Bank of Mobile*, 14 T.C. 1375 (1950), affd. 199 F. 2d 657 (5th Cir. 1952). Accordingly, we hold that the portion of the antitrust settlement attributable to the loss incurred when Best sold its section 1231 property is ordinary income and not capital gain.

The petitioner concedes that a portion of the settlement represented lost profits and must be reported as ordinary income. However, he argues that a portion of the settlement is allocable to injury to the capital invested in the business and to goodwill. According to such argument, the portion so allocated is capital

[3] SEC. 1231(a). GENERAL RULE.—If, during the taxable year, the recognized gains on sales or exchanges of property used in the trade or business * * * exceed the recognized losses from such sales, exchanges, * * * such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. * * *

gain. The Commissioner determined that no portion of the settlement was allocable to the loss of goodwill or capital.

The petitioner has the burden of proving that part of the settlement is allocable to injury to Best's capital and goodwill. See *Sager Glove Corp.,* 36 T.C. 1173, 1180 (1961); *Estate of Mabel K. Carter,* 35 T.C. 326, 333 (1960); *Ralph Freeman,* 33 T.C. 323, 328 (1959). To carry such burden, he relies solely upon the allocation of damages made in the complaint in the antitrust suit. He argues that the settlement must be allocated in the same proportion as the damages alleged in the complaint. However, the allocation in the complaint, by itself, is insufficient to determine how the settlement should be allocated.

The petitioner has completely failed to produce any evidence concerning the actual basis of settlement. He did not offer any testimony by the parties to the settlement negotiations nor any reason for his failure to do so. His failure to produce such evidence suggests that it would have been adverse to his contention. *Estate of Mabel K. Carter,* 35 T.C. at 336; see *Wichita Terminal Elevator Co.,* 6 T.C. 1158 (1946), affd. 162 F. 2d 513 (10th Cir. 1947). We are satisfied that as a result of the failure of the business, there is some loss of goodwill or going-concern value, but in view of the petitioner's failure to establish satisfactorily the amount of the damages properly allocable to such claim, we must resolve any doubts against him. For these reasons, we conclude and hold that only $5,000 of the net proceeds of the settlement are allocable to a capital loss and that the remaining proceeds of the settlement must all be treated as ordinary income. *Cohan v. Commissioner,* 39 F. 2d 540, 543-544 (2d Cir. 1930); *Sidney Merians,* 60 T.C. 187, 190 (1973).

*Decision will be entered under Rule 155.*