ALBERT F. HARRIS AND PHYLLIS K. HARRIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Harris v. Commissioner
Docket No. 26788-84.
United States Tax Court
T.C. Memo 1988-195; 1988 Tax Ct. Memo LEXIS 218; 55 T.C.M. (CCH) 769; T.C.M. (RIA) 88195; May 3, 1988; As amended May 3, 1988 E. Norman Graham, for the petitioners. Frank D. Armstrong, Jr., for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined deficiencies and additions to tax in petitioners' Federal income tax as follows: Addition to Tax
Taxable Year Ended
Deficiency
[1]Section 6653(a) December 31, 1979
$ 33,389
$ 1,669
December 31, 1980
11,160
558
December 31, 1981
9,744
487
After concessions, [2] the issues for determination are (1) whether petitioners understated their gross receipts from their business Local Services for taxable year 1979; (2) whether petitioners may deduct *222 various expenses in connection with their business Local Service Systems for taxable year 1981; (3) whether petitioners are entitled to losses claimed in connection with their house located in Avon, North Carolina, for the taxable years in issue; (4) whether petitioners' fishing activity constituted an "activity not engaged in for profit" within the meaning of section 183 for the taxable years in issue; (5) whether petitioners may deduct car and truck expenses for the taxable years in issue; (6) whether petitioners understated their taxable gain from the sale of a partnership interest in taxable year 1979; and (7) whether petitioners are liable for an addition to tax under section 6653(a) for the taxable years in issue. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in Stokesdale, North Carolina, when they filed their petition in this case. Local Services
During the taxable years in issue, petitioners operated *223 an accounting and tax return preparation business in Stokesdale, North Carolina, called Local Services. [3] Local Services is a sole proprietorship. Local Services' books are set up in the following manner. For each tax return client, Local Services maintains a three by five inch card which reflects the fee charged to the client and the date of receipt of payment. Local Services also prepares monthly sales tax reports for clients. During the taxable years in question, petitioners determined Local Services' gross receipts for tax purposes by totalling the fees reflected on each three by five client card and amounts received for the preparation of sales tax reports. The amounts received for the preparation of sales tax reports were gleaned from bank deposit tickets. Local Services' yearend tax records include the calculator tapes prepared by petitioners illustrating the total amounts reflected on the three by five inch cards for tax return fees and the bank deposit records for the preparation of sales tax reports. The gross receipt *224 figures for Local Services on petitioners' Schedule C of Form 1040 for taxable years 1980 and 1981 agreed with the total amounts on petitioners' calculator tapes for those years. However, for the taxable year 1979, petitioners reported gross receipts of $ 36,151 on Schedule C of Form 1040. Petitioners' calculator tape showed gross receipts $ 51,151 for taxable year 1979. Accordingly, respondent asserts that petitioners underreported their income for taxable year 1979 by $ 15,000. Local Services Systems
In 1981, petitioners attempted to start another business called Local Services Systems. Petitioners' Schedule C of Form 1040 for 1981 lists Local Service Systems' main business activity as "accounting systems" and adopts the cash method of accounting. On June 5, 1981, petitioners acquired a building in which to operate Local Service Systems. [4] This building was over 70 years old, and Local Service Systems incurred expenses of $ 4,570.36 in 1981 for building improvements. [5] Petitioners' 1981 Form 1040 return stated that the building had a cost basis of $ 4,000. Petitioners deducted the $ 4,570.36 as a repair expenses of Local Service Systems. Respondent disallowed this *225 deduction and added the cost of the improvements to the cost basis of the building, arriving at a total basis of $ 8,570.36. [6]
Petitioners claimed a deduction of *226 $ 5,112.62 for Local Service Systems' office supplies and postage in 1981. The deduction included amounts paid for carpets and office furnishings. [7] Respondent disallowed the deduction of $ 5,112.62 and allowed depreciation on $ 4,909 using the accelerated cost recovery system method over a period of five years. The balance of $ 203.62 was disallowed due to lack of substantiation. In December 1981, Local Service Systems purchased 100 ledger books at a total cost of $ 4,650.25. Local Service Systems sold three books in 1981. The remaining 97 books were left with potential clients on a trial basis. On Local Service Systems' Schedule C in 1981, petitioners deducted $ 4,650.25 as a supplies expense which represented *227 the cost of the 100 ledger books. Respondent allowed the deduction for the cost of three ledger books ($ 139.25), but disallowed the remaining expense of $ 4,511 on the grounds that the ledger books represented inventory and thus the accrual method of accounting was necessary to clearly reflect the income of Local Service Systems. The Bonita Drive House
In 1978, petitioners purchased two waterfront lots in Avon, North Carolina. Petitioners built a modular house on this property at a cost of $ 38,000 (the "Bonita Drive house"). [8] During the taxable years in question, petitioners paid Dare County property taxes on the Bonita Drive house. Petitioner also paid property insurance and the monthly electric, water, telephone and other utility bills on the Bonita Drive house for the taxable years in issue. Petitioners have no property listed with the Dare County tax office other than the property located on Bonita Drive. *228 On the Form 1040 returns for the taxable years at issue, petitioners claimed losses on Schedule E in connection with an alleged rental of the Bonita Drive house. [9] Respondent determined that the Bonita Drive house was not rented and disallowed the Schedule E losses. Additionally, petitioner deducted utility and other maintenance expenses on the Bonita Drive House in part on a Schedule C pertaining to a fishing activity and in part on a Schedule E pertaining to the Bonita Drive house. [10]
*229 The "Phyllis Ann"
During the taxable years in issue, petitioners owned a boat, the "Phyllis Ann," that was docked behind the Bonita Drive house. [11] Petitioners registered the "Phyllis Ann" with the Boat Registration Section, North Carolina Wildlife Resources Commission, as a pleasure boat. During the taxable years at issue, petitioners did not rent the "Phyllis Ann" to others. Neither of the petitioners had a boat captain's license, nor did petitioners obtain a commercial fishing license for the "Phyllis Ann" from the North Carolina Division of Marine Fisheries for 1979, 1980 or 1981. [12] Petitioners generally worked full-time at their accounting and tax return practice in Stokesdale from January through mid-April of the taxable years in issue. After mid-April, petitioners traveled to Avon, North Carolina, on Wednesday or Thursday of each week and returned to Stokesdale on Sunday. While at Avon, petitioners fished on the "Phyllis Ann" and on occasion were accompanied by family members or friends. Petitioners sold fish that they caught during these trips to individuals during the taxable years in issue. Petitioners did not maintain a bank account in connection with their *230 fishing activities in 1979, 1980 or 1981. On their Form 1040 tax returns for the taxable years in issue, petitioner claimed losses in connection with their fishing activity as follows: Year
Gross Receipts
Deductions
Net Loss
1979
$ 4,548.00
$ 34,918.65
$ 30,370.65
1980
4,861.30
22,030.28
17,168.98
1981
7,260.00
22,401.79
15,141.79
Total $ 16,669.30
$ 79,350.72
$ 62,681.42
Respondent disallowed the losses claimed by petitioners in connection with their fishing activity, asserting that petitioners' fishing was an "activity not engaged in for profit" within the meaning of section 183. Car and Truck Expense
On their Form 1040 returns for the taxable years in issue, petitioners claimed car and truck expenses as follows: 1979
1980
1981
Schedule C - Local Services
$ 1,343.34
$ 2,915.31
$ 2,048.00
Schedule C - Commercial Fishing
1,343.34
--
--
$ 2,686.68
$ 2,915.31
$ 2,048.00
*231 Petitioners maintained a travel log reflecting daily mileage. Travel log mileage of 70 percent, 64 percent, and 70 percent represented trips between Stokesdale and Avon, North Carolina, during 1979, 1980 and 1981, respectively. [13] As respondent asserts that the trips to Avon were not business-related, respondent disallowed car and truck expenses as follows: 1979
1980
1981
Claimed per return
$ 2,686
$ 2,915
$ 2,048
Allowed
806
1,049
614
Disallowed     $ 1,880
$ 1,866
$ 1,434
Depreciation Expense
Petitioners claimed various depreciation expense on the 1979, 1980 and 1981 Form 1040 returns. [14] First, petitioners claimed depreciation on their automobiles. Petitioners owned a 1977 Oldsmobile, a 1980 Cadillac, and a 1977 Blazer. On July 30, 1980, petitioners purchased the 1980 Cadillac Seville at a cost of $ 17,473. Petitioners traded in the 1977 Oldsmobile Ninety-Eight on the Cadillac and received a trade-in allowance of $ 4,783. Respondent allowed depreciation *232 on the 1977 Oldsmobile in the amounts of $ 970 and $ 678 for taxable years 1979 and 1980, respectively. Respondent reduced petitioners' depreciation allowance by 70 percent in 1979 and 64 percent in 1980 on the ground that the trips to Avon were personal rather than business-related. Respondent only allowed seven months of depreciation in 1980 as the car was traded in for the 1980 Cadillac in July, 1980. As petitioners did not own the Oldsmobile during 1981, no depreciation was allowed for that year. [15]
Respondent allowed depreciation on the 1980 Cadillac in the amounts of $ 1,557 and $ 599 for taxable years 1980 and 1981, respectively. Respondent reduced petitioners' depreciation allowance by 64 percent in 1980 and 70 percent in 1981 on the grounds that the trips to Avon were not business related. Respondent allowed only five months' depreciation in 1980 as petitioner only owned the Cadillac for the five months in 1980. Petitioners *233 also claimed depreciation expense on the 1979 Sportfisher boat, the 1977 Blazer (claimed to be used in connection with petitioners' fishing activity) their fishing equipment, the boat dock hookup, and the Bonita Drive house. Respondent has disallowed all depreciation in connection with these items. Gain From the Sale of Partnership Interest
On September 27, 1976, petitioners and Mervyn R. and Virginia King ("The Kings") formed a partnership operating as Intermediate Care Facilities of Stokesdale, North Carolina. The name of the partnership was later changed to Countryside Manor Nursing Home ("Countryside Manor"). [16] The partnership's purpose was to own and operate an intermediate health care facility or nursing home. The principal assets of the partnership were the building, the land and the equipment. In July of 1977, Countryside Manor opened to the public. Prior to October, 1978, petitioner Albert Harris was the general manager of Countryside Manor and was responsible for *234 accounting and financial matters. [17] Since its 1977 opening, Henry A. Walker ("Walker") was the administrator of Countryside Manor. His duties included personnel and general administrative functions, excluding accounting and financial matters. On October 1, 1978, petitioners sold their 50 percent interest in the partnership to the Kings and Walker for $ 250,000. At this time, Walker assumed petitioner Albert Harris' duties as general manager. More importantly, the Sale and Purchase Agreement dated October 1, 1978, stated as follows: both Albert F. Harris and Phyllis K. Harris hereby jointly and severally warrant that they have taken no action affecting the partnership business which is not now properly reflected on the *235 books of the partnership. To the extent properly reported as hereinbefore set forth, Walker and Kings specifically assume all partnership liability for which Harris has been previously liable prior to October 1, 1978, and they hereby release Harris from all past and future liability on partnership debts properly reflected on partnership records. * * * [Emphasis supplied.]
Elsewhere in the Sale and Purchase Agreement and in a Supplemental Agreement of the same date, [18] the parties underscore that petitioners are relieved from all partnership liability. At closing, petitioners received $ 25,000 from the purchasers. On January 31, 1979, petitioners received a check for $ 222,375 in final payment for their partnership interest. In 1979, petitioners paid $ 17,300 on a partnership debt. [19] Petitioners did not report the sale of their partnership interest on their 1978 Form 1040 return. On their 1979 Form 1040 return, petitioners did report a gain of $ 47,506 on the sale of their partnership interest. Respondent contends that petitioners have understated their taxable gain from the sale of their partnership interest by $ 32,929 in 1979. [20]
*236 On April 26, 1984, respondent issued a statutory notice of deficiency to petitioners determining deficiencies and additions to tax under section 6653(a) for taxable years 1979, 1980, and 1981. OPINION Local Services - Understatement of Gross Receipts
The first issue for our determination is whether petitioners understated their 1979 gross receipts of Local Services by $ 15,000. Respondent's determination of a deficiency in tax is presumptively correct and petitioners bear the burden of proving it wrong. Welch v. Helvering,290 U.S. 111, 114 (1933); Rule 142(a). Petitioners have not brought forth any credible explanation or evidence to explain the discrepancy between the 1979 calculator tape gross receipts of $ 51,151 and the 1979 Form 1040 return amount of $ 36,151. Petitioners allege that due to the illness of petitioner Phyllis Harris, the 1979 gross receipts of Local Services were understated by $ 6,633.65. However, all we have before us on the record is petitioner Phyllis Harris' statement that she was ill. We do not know why or how her illness caused the understatement of gross receipts. Furthermore, we have reason to doubt the veracity of *237 petitioners' claim due to petitioner Albert Harris' conduct before revenue agent James M. Sexton ("Sexton") during audit. When Sexton, whom we found to be a thoroughly credible witness, questioned petitioner Albert Harris concerning the discrepancy, Harris gave different stories at different times. At one point, Albert Harris stated that gross receipts were not determined by the calculator tape method but by the bank deposit method. Later, Albert Harris admitted to utilizing the calculator tape method of calculating gross receipts but blamed only a $ 6,633.65 discrepancy on his wife's illness. We found petitioner Albert Harris to be an evasive and devious witness and cannot put any faith in his testimony. On this record, we find for respondent on this issue. Local Service Systems - Expenses
Turning to petitioners' deduction for various expenses attributable to Local Service Systems, petitioners bear the burden of proving entitlement to the claimed deductions. Rule 142(a). The law is well settled that tax deductions are a matter of legislative grace. New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934). Petitioners, when referring to a section *238 to justify their deductions, must establish that they fall within its terms. Roberts v. Commissioner,62 T.C. 834, 836 (1974). Here, we find that petitioners have not met their burden of proof for the following reasons. First, petitioners attempt to currently deduct, as a repair expense in 1981, $ 4,570 for improvements to its office building. Section 263(a) provides that no current deduction shall be allowed for capital expenditures. It is necessary to take into consideration the purpose for which an expenditure is made in determining whether such expenditure in capital in nature or constitutes a current expense. Oberman Manufacturing Co. v. Commissioner,47 T.C. 471, 482 (1967); Illinois Merchants Trust Co. v. Commissioner,4 B.T.A. 103 (1926). Section 162 provides for the deduction of all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. This provision includes the cost of incidental repairs to keep business property in an ordinary and efficient operating condition. Sec. 1.162-4, Income Tax Regs. However, such expenditures are distinguishable from those for replacements, *239 alterations, improvements or additions which prolong the useful life of the property, increase its value, or make it adaptable to a different use. Secs. 1.162-4 and 1.263(a)-1(a)(1), Income Tax Regs. The record herein discloses the total amount expended by petitioners and a rough explanation of the expenditures. However, there is no breakdown for each item. We agree with respondent that petitioners' major electrical and structural repairs to a 70-year old building should be capitalized and depreciated. [21] We cannot determine from the record if any repairs were made of an ordinary, necessary and routine character. Petitioners allege that because of water damage from a storm in the year of the repair expense, the useful life of the building was not extended by the repairs. Petitioners presented no evidence on the record to substantiate that storm damage occurred. Accordingly, as petitioners have the burden of proof and the record is virtually barren of any explanation, we must hold for respondent and require petitioners to capitalize $ 4,570 in improvements. *240 Second, petitioners claimed a deduction of $ 5,112.62 for supplies and postage on the 1981 Schedule C of Local Service Systems. Of this amount, $ 4,909 was spent on carpeting, desks, chairs and other furnishings in the Local Service Systems building. [22]
Section 263 prohibits the allowance of a deduction for the cost of a capital asset. A capital asset includes "machinery and equipment, furniture and fixtures, and similar property having a useful life substantially beyond the taxable year." Sec. 1.263(a)-2(a), Income Tax Regs. Petitioner Albert Harris admitted that the carpeting, desks and office furnishings would be serviceable for a number of years. Under the facts before us, petitioners are not entitled to a deduction for carpeting, desks and office furnishings in 1981 as a supplies and postage expense. Finally, respondent asserts that petitioners are not entitled to deduct the cost of 97 of 100 ledger books left with potential customers on a trial basis. Respondent contends that the 97 ledger books in the hands of potential customers at the end of 1981 constituted inventory and *241 thereby necessitated placing petitioners on the accrual method. Secs. 446, 471. However, we find that these ledger books are not inventory of petitioners but rather represent an effort to engender clients for his new business. If petitioner decided to abandon his business efforts, the 97 remaining ledger books could be deducted as an abandonment loss under section 165. Section 165 provides in pertinent part: (a) General Rule. --There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. [23]
*242 On the record before use, there is a dearth of evidence presented on the actual business of Local Service Systems. As such, we are precluded from finding when Local Service Systems ceased operations. We are thus unable to make a judgment that petitioners sustained an abandonment loss in 1981. Neither can we make a determination as to whether these ledger books represented ordinary and necessary business expense under section 162. Petitioners, simply put, have failed to carry their burden of proof. Accordingly, respondent's denial of the deduction is sustained. Bonita Drive House - Rental Losses
On their Form 1040 returns for the taxable years in issue, petitioners claimed rental income, and rental expense. For 1979 through 1981, petitioners reported rental losses totalling $ 17,254.94. Respondent asserts that the Bonita Drive House was neither rented nor held for the production of income and has disallowed these deductions. Petitioners have the burden of proving that the Bonita Drive property was rented during each of the taxable years. Rule 142(a). There is no credible evidence on the record which proves that petitioners rented the Bonita Drive house. In *243 fact, what evidence exists points to the fact that petitioners used the Bonita Drive house as a summer vacation home. Petitioners asserts that during the taxable years in question petitioners rented the Bonita Drive house to Ann Hernandez for $ 135 per month. Petitioner did not maintain any records of rent payments. Ann Hernandez did not appear at trial. [24] Furthermore, petitioner Albert Harris alleged that he never stayed at the Bonita Drive house but rather stayed in a trailer when in Avon for fishing expeditions while his wife stayed in a nearby motel. Despite the fact that the trailer was titled in another unrelated person's name, petitioner asserts that he had exclusive use and possession of the trailer. However, petitioner Phyllis Harris admitted that petitioners did in fact stay in the Bonita Drive house on several occasions during the taxable years in issue. As we have stated, petitioners, in particular Albert Harris, are not credible witnesses. We find that petitioners have failed to carry their burden of showing that the Bonita Drive house was held out for rental or the production of income because of admitted personal use and no credible evidence of rentals. *244 Johnson v. Commissioner,59 T.C. 791, 813-815 (1973), affd. 495 F.2d 1079 (6th Cir. 1974). Accordingly, we sustain respondent's determination with respect to this issue. [25]
The Phyllis Ann - Commercial Fishing Activity
Petitioners claimed losses on their 1979, 1980 and 1981 Form 1040 returns in connection with the operation of their 30-foot Sportfishing boat the "Phyllis Ann" in the amounts of $ 30,370.65, $ 17,168.98 and $ 15,141.79, respectively. Respondent denied these losses, asserting *245 that petitioners' fishing activity was not an activity engaged in for profit in the meaning of section 183(c). An "activity not engaged in for profit" is defined in section 183(c) as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." [26] If the activity is not engaged in for profit, section 183(b) separates the claimed deductions into two groups. Section 183(b)(1) allows only those deductions which are not dependent on profit motive. Section 183(b)(2) provides that deductions which would be allowed only if the activity is engaged in for profit shall be allowed, but only to the extent that gross income from the activity exceeds the deductions otherwise allowable under section 183(b)(1). *246 In order to deduct expenses of an activity under either section 162 or 212, the taxpayer must show that he engaged in the activity with an actual and honest objective of making a profit. Sec. 1.183-2(a), Income Tax Regs.; Beck v. Commissioner,85 T.C. 557, 569 (1985); Flowers v. Commissioner,80 T.C. 914, 931 (1983); Dreicer v. Commissioner,78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Golanty v. Commissioner,72 T.C. 411, 425-426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). In this context, "profit" means economic profit, independent of tax savings. Landry v. Commissioner,86 T.C. 1284, 1303 (1986), on appeal (5th Cir., Jan. 12, 1987); Herrick v. Commissioner,85 T.C. 237, 255 (1985); Surloff v. Commissioner,81 T.C. 210, 233 (1983). The burden of proof is on petitioners to show that they engaged in a fishing activity with the requisite objective of realizing an economic profit. Rule 142(a); Welch v. Helvering,290 U.S. 111, 115 (1933). The issue of whether *247 a taxpayer engages in an activity with the requisite profit objective is one of fact to be resolved on the basis of all the surrounding facts and circumstances. Sec. 1.183-2(b), Income Tax Regs.; Engdahl v. Commissioner,72 T.C. 659 (1979); Allen v. Commissioner,72 T.C. 28 (1979). In determining whether an activity is engaged in for profit, the following factors are to be considered: (1) the expertise of the taxpayer in carrying on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profit, if any, which is earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. Sec. 1.183-2(b), Income Tax Regs.; Boyer v. Commissioner,69 T.C. 521 (1977); Benz v. Commissioner,63 T.C. 375 (1974). It is not intended, *248 however, that only the aforesaid factors be taken into account in making the determination. Sec. 1.183-2(b), Income Tax Regs. No single factor is determinative and the issue is to be resolved by examining all the circumstances. Fuchs v. Commissioner,83 T.C. 79, 98 (1984); Dean v. Commissioner,83 T.C. 56, 74 (1984); Flowers v. Commissioner,80 T.C. at 931; Dunn v. Commissioner,70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980). In our determination, we ascribe greater weight to objective factors than to mere after-the-fact statements of intent. Fuchs v. Commissioner, supra;Siegel v. Commissioner,78 T.C. 659 (1982); Engdahl v. Commissioner, supra.
After carefully reviewing the entire record before us, we conclude that petitioners have not satisfied their burden of proving that profit was the motive of their fishing activities in the years at issue. In this regard, an examination of the factors listed in section 1.183-2(b), Income Tax Regs., is instructive. First, while petitioner Albert Harris testified that he had fished all his life, there *249 is no evidence that either petitioner had an expertise or understanding of the commercial fishing trade. Petitioners did not have a boat captain license. "Phyllis Ann" is not a charter boat. More importantly, petitioners did not obtain a commercial fishing license which was required by the State of North Carolina. Second, petitioners did not carry on their fishing activity in a businesslike manner. No bank account existed for petitioners' fishing. On several occasions, petitioners did not deposit his cash receipts in any bank account. In fact, the only record maintained in connection with petitioners' activity was a boat log for the "Phyllis Ann." Third, petitioners worked full-time from January to mid-April at their accounting and tax return business in Stokesdale, and it is unclear how much petitioners actually fished on their trips to Avon. The boat log and automobile log are inconsistent as to petitioners' visits to Avon. Moreover, the total fish sales noted in the boat log do not agree with the gross receipts reflected on petitioners' 1980 and 1981 Form 1040 returns. [27] These inconsistencies compel us to question the genuineness as well as the credibility of the boat log. *250 Fourth, petitioners sustained large losses in each taxable year before the Court attributable to the fishing activity. Petitioners sold fish in a haphazard casual manner. It appears that as operated the likelihood that petitioners' fishing activity would ever sustain a profit is virtually none. Finally, it is clear to this Court that this activity was one of personal pleasure and recreation for petitioners. Petitioners were often accompanied by family members and friends on their fishing expeditions on the "Phyllis Ann." Occasionally, petitioners had "fish fries" or social gatherings at the beach house. Moreover, petitioners registered the "Phyllis Ann" with the Boat Section of the North Carolina Wildlife Resources Commission as a pleasure boat. From a close examination of the entire record, we find that petitioners' fishing activity was clearly not an activity engaged in for profit. Rather, we find that petitioners fished and *251 spent time on their boat for purely recreational reasons. Consequently, we hold that petitioners are not entitled to losses in 1979, 1980 or 1981 in connection with this fishing activity under either sections 162 or 212 due to the absence of an actual and honest profit objective. Car and Truck Expense
Petitioners bear the burden of proving their entitlement to deductions for automobile and truck expense. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Petitioners' automobile log reflects that 70 percent, 64 percent and 70 percent of the mileage incurred in taxable years 1979, 1980, and 1981, respectively, involved traveling back and forth between Stokesdale and Avon, North Carolina. Under section 162(a) an employee or a self-employed individual may deduct the cost of operating an automobile to the extent it is used in a trade or business. In order to establish their entitlement to a deduction for the Stokesdale-Avon trips, petitioners must establish that their trips to Avon were business-related. We have already determined that petitioners' fishing activity was not engaged in for profit, but was for pleasure. Petitioners have produced no other *252 evidence to show they are entitled to the amount disallowed. Accordingly, we must sustain respondent on this issue. Depreciation Expense
The depreciation deduction is allowed only for property used in business or held for the production of income. Sec. 167(a). As we have determined that petitioners' fishing activity was not engaged in for profit and petitioners' Bonita Drive house was not rented during the taxable years in issue and petitioners have brought forth no evidence on this issue, we sustain respondent's disallowance of petitioners' claimed depreciation expense. Welch v. Helvering, supra; Rule 142(a). Gain on the Sale of a Partnership Interest
Under section 741, the sale or exchange of an interest in a partnership is treated as the sale or exchange of a capital asset. The gain or loss of a partner on the sale of a partnership interest is the difference between the amount realized [28] and the adjusted basis of the partner in the partnership interest. The partner's adjusted basis in the partnership interest is determined under section 705. [29]
*253 In 1979, petitioners contend that they had a cost basis of $ 103,608.62 in their partnership interest in Countryside Manor composed of the following items: Capital Account Per Audit
$ 28,987.99
Interest Paid to First National Bank
8,503.79
Interest Paid to Inez Morene
3,921.28
Interest Paid to Peoples Bank
2,195.56
Julia Martin Contract
60,000.00
Total                        $ 103,608.62
Petitioners' computation of their basis in their partnership interest is clearly erroneous. First, their initial basis of $ 28,987.99 was their basis prior to their $ 25,000 payment in 1978. Second, petitioners have no evidence supporting their payment of interest. [30] Third, petitioners have not convinced this Court that petitioners owed their daughter-in-law Julia Martin $ 60,000 for services rendered in connection with her employment at Countryside Manor. The document presented to this Court as evidence is clearly a fabrication. Walker, the administrator of personnel, was unaware of any agreement of this kind. Julia Martin was paid hourly wages ranging from $ 3.65 to $ 4.50 and worked at Countryside Manor for approximately one year *254 and six months. Moreover, the agreement which petitioners signed with the Kings and Walker would have rendered the partnership, not petitioners, liable for the debt. The facts do not support petitioners' contentions. We sustain respondent's calculation of petitioners' basis in their partnership interest and find that petitioners' underreported their taxable gain by $ 32,928.84 in 1979. Addition to Tax - Section 6653(a)
Finally, we consider whether petitioners are liable for addition to tax under section 6653(a) for each of the taxable years in issue. Section 6653(a) provides for an addition to tax if any part of the underpayment is due to negligence or an intentional disregard of the rules or regulations. Under section 6653(a), negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985). The burden of proof is on petitioners to establish that they are not liable for *255 the addition to tax. Bixby v. Commissioner,58 T.C. 757, 792 (1972). Petitioners have failed to introduce any evidence to carry their burden of proof. What is particularly reprehensible in this case is that prior to the years in issue, petitioner Albert Harris served as a [Text Deleted by Court Emendation] tax auditor for the Internal Revenue Service. Moreover, during the years in issue, petitioners were employed in a tax preparation business and as such, should be particularly aware of their legal duties concerning the issues before us. Accordingly, we find petitioners liable for an addition to tax under section 6653(a) for each of the taxable years in issue. To reflect the foregoing, Decision will be entered for respondent.
APPENDIX I
DEPRECIATION EXPENSE
SCHEDULE C - LOCAL SERVICES
Method of
Life
Description of
Date
Cost or
Computing
or
Property
Acquired
Other Basis
Depreciation
Rate
1977 Oldsmobile 98
1977
$ 9,700.00 SI.
3
Copy Machine
1976
1,200.00
SI.
4
Typewriter
1979
906.00
SI.
3
1980 Cadillac Seville
July, 1980
17,743.00
Less additional first
3,549.00
year depreciation  14,194.00
SI.
7
Total additional first
year depreciation Total depreciation
*256 DEPRECIATION EXPENSE
SCHEDULE C - LOCAL SERVICES
Depreciation Taken
Description of
Taxable year
Property
1979
1980
1981
1977 Oldsmobile 98
$ 3,233.00
$ 3,233.00
$ 3,233.00
Copy Machine
300.00
--
--
Typewriter
302.00
302.00
302.00
1980 Cadillac Seville
Less additional first
year depreciation  --
2,027.00
2,027.00
Total additional first
year depreciation --
3,549.00
--
Total depreciation
$ 3,835.00
$ 9,111.00
$ 5,563.00
APPENDIX II >100> >101> DEPRECIATION EXPENSE
SCHEDULE C - FISHING ACTIVITY
Method of
Life
Description of
Date
Cost or
Computing
or
Property
Acquired
Other Basis
Depreciation
Rate
1977 Chevrolet Blazer
1977
$ 7,300.00
SI.
5
1979 30' Sports Fisherman
Boat  1979
80,000.00
Less additional first
year depreciation  16,000.00
Adjusted basis
$ 64,000.00
SI.
10
Fishing equipment
1979
2,610.00
Less additional first
year depreciation  522.00
Adjusted basis
2,088.00
SI.
7
Boat dock hookup
1979
4,017.00
Less additional first
year depreciation  803.00
Adjusted basis
3,213.00
SI.
7
Total additional first
year depreciation  Total Depreciation
*257 DEPRECIATION EXPENSE
SCHEDULE C - FISHING ACTIVITY
Depreciation Taken
Description of
Taxable year
Property
1979
1980
1981
1977 Chevrolet Blazer
$ 1,460.00
$ 1,460.00
$ 1,460.00
1979 30' Sports Fisherman
Boat  Less additional first
year depreciation  Adjusted basis
6,400.00
6,400.00
6,400.00
Fishing equipment
Less additional first
year depreciation  Adjusted basis
298.00
298.00
298.00
Boat dock hookup
Less additional first
year depreciation  Adjusted basis
459.00
459.00
459.00
Total additional first
year depreciation  17,325.00
--
--
Total Depreciation
$ 25,942.00
$ 8,617.00
$ 8.617.00
APPENDIX III >100> >101> DEPRECIATION EXPENSE
SCHEDULE C - LOCAL SERVICE SYSTEMS
Method of
Life
Description of
Date
Cost or
Computing
or
Property
Acquired
Other Basis
Depreciation
Rate
Building
1980
$ 4,000.00
SI.
10
DEPRECIATION EXPENSE
SCHEDULE C - LOCAL SERVICE SYSTEMS
Depreciation Taken
Description of
Taxable year
Property
1979
1980
1981
Building
--
--
$ 400.00
APPENDIX IV
DEPRECIATION EXPENSE
SCHEDULE E - RENTAL PROPERTY
Method of
Life
Description of
Date
Cost or
Computing
or
Property
Acquired
Other Basis
Depreciation
Rate
Property A
Bank building
1976
$ 20,000.00
SI.
20
Heat & Air Conditioning
1979
1,864.00
SI.
5
Additional first year
depreciation  Property B
Bonita Drive-Avon, N.C.
1978
38,000.00
SI.
20
Furniture &
Air Conditioning  1978
4,250.00
SI.
7
Furniture
1979
1,360.00
SI.
7
Appliances
1980
1,498.00
SI.
3
Additional first year
depreciation  Property C
Tire shop building
1980
4,000.00
SI.
10
Total Depreciation
*258 DEPRECIATION EXPENSE
SCHEDULE E - RENTAL PROPERTY
Depreciation Taken
Description of
Taxable year
Property
1979
1980
1981
Property A
Bank building
$ 1,000.00
$ 1,000.00
$ 1,000.00
Heat & Air Conditioning
373.00
373.00
373.00
Additional first year
depreciation  466.00
Property B
Bonita Drive-Avon, N.C.
1,900.00
1,900.00
1,900.00
Furniture &
Air Conditioning  607.00
607.00
607.00
Furniture
194.00
194.00
194.00
Appliances
--
499.00
499.00
Additional first year
depreciation  340.00
--
--
Property C
Tire shop building
--
--
400.00
Total Depreciation
$ 4,880.00
$ 4,573.00
$ 4,973.00
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years at issue. All rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Petitioners conceded various unreported income and overstated expense items for the taxable years in issue. ↩
3. Prior to commencing his tax return business, petitioner Albert F. Harris was employed as a tax auditor with the Internal Revenue Service. ↩
4. On June 5, 1981, petitioner acquired two buildings adjacent to the Local Services building for a cost of $ 8,000. Local Service Systems operated out of one building. Petitioners rented the second building to a tire shop. ↩
5. Petitioners made the following payments for improvements: Payee
Amount
Jimmy Holland (building supplies)
$ 255.65  Jimmy Holland (labor on building)
200.00
Glenn Dalton (painting building)
200.00
Jimmy Holland (labor on building)
650.27
Madison Lumber Company (materials)
1,688.84
S & S Hardware
199.26
S & S Hardware
102.09
Stokesdale Electric Co. (patched and replaced wiring)
1,274.25
$ 4,570.36
Petitioners' improvements included rewiring the building, replastering the walls, and making major repairs to the roof and chimney. ↩
6. Respondent allowed one month's depreciation using the accelerated cost recovery system method over a period of 15 years. As a result, respondent reduced the depreciation claimed on the building from $ 400 to $ 86.00. ↩
7. The deducted items included: ↩
Payee
Amount
NY Carpet World (carpet for building)
$ 1,007.15
Cash
100.00
Skyline Color Labs (pictures for office)
52.30
Jamestown Furniture Sales (office furniture)
1,881.80
Local Services (paid to Judy's Hallmark
for furniture)   500.00
Judy's Hallmark (payments on furniture)
472.00
Judy's Hallmark (payments on furniture)
750.00
Judy's Hallmark (payments on furniture)
246.00
$ 5,009.25
8. Avon, North Carolina is situated on the Outer Banks of North Carolina. The lots are located in a development known as Hatteras Colony. Petitioners' house is located on Bonita Drive and backs on Pamlico Sound. The Bonita Drive house is a three-bedroom, one and a half bath house. In 1978, petitioners added an air conditioner and furniture at a cost of $ 4,250. In 1979, petitioners added furniture at a cost of $ 1,360. ↩
9. On Schedule E, petitioners claimed the following: ↩
Year
Gross Receipts
Deductions
Losses
1979
$ 1,620.00
$ 7,214.66
$ 5,594.66
1980
1,620.00
8,907.34
7,287.34
1981
1,620.00
5,992.94
4,372.94
Total  $ 4,860.00
$ 22,114.94
$ 17,254.94
10. The parties denote Schedule E for the Bonita Drive house as Schedule "C". We believe this to be in error. Petitioners claimed these expenses in this manner: ↩
Year
Bonita Drive: Sch. E
Commercial Fishing - Sch. C
1979
Insurance
$ 598.00
Utilities
574.92  Telephone
$ 226.13  1980
Taxes
204.05  Utilities
1,169.05
Insurance
684.00  Telephone
387.64
Water
135.10  1981
Insurance
629.00  Utilities &
1,734.65
telephone  11. On April 16, 1979, petitioners traded in a 1978 Penn Yan 24-foot Sportfisher boat for a 1979 Penn Yan 30-foot Sportfisher. Petitioners named the 30 foot Sportfisher the "Phyllis Ann" after petitioner Phyllis Harris. ↩
12. A boat captain license would enable petitioners to charge a fee to persons going out on the boat to fish. ↩
13. The travel log reflects that petitioners made the 670-mile roundtrip between Stokesdale and Avon 23 times in 1979, 17 times in 1980, and 28 times in 1981. ↩
14. See Appendix I, II, III, and IV attached to this opinion. ↩
15. Petitioners agree that they are entitled to only seven months' depreciation on the 1977 Oldsmobile in 1980 and are entitled to no depreciation on the Oldsmobile for 1981. ↩
16. Mervyn R. King is the medical director and attending physician of Countryside Manor. Virginia King is a certified registered nurse and is the Director of Nursing of Countryside Manor. ↩
17. Petitioners' daughter, Julia Harris Martin, was employed as a social director at Countryside Manor from July, 1977 through October 6, 1978. While Julia Martin was employed by Countryside Manor, her hourly wage rate was increased from $ 3.65 to $ 4.50 due to her participation in a 36-hour Activity Coordinator Course conducted by the North Carolina Health Care Facilities Association. Countryside Manor paid for Mrs. Martin to attend this course. ↩
18. The Sale and Purchase Agreement and the Supplemental Agreement both bear the date October 1, 1978, but were both executed on October 6, 1978. ↩
19. This debt concerned a liability to a prior owner of land on which the partnership was situated. The record is unclear why petitioners paid this note; however, respondent accepted petitioners' payment in calculating their partnership basis. ↩
20. Respondent determined petitioners' tax basis in the partnership to be $ 28,988 at the time of sale. Therefore, in 1978, respondent determined that no gain should be recognized since petitioners' basis exceeded the $ 25,000 received. However, the $ 25,000 reduced petitioners' basis to $ 3,988. For taxable year 1979, respondent determined that petitioners understated their taxable gain by $ 32,929 as follows: ↩
1979 proceeds from sale of partnership interest
$ 222,375 Less: Unused basis payment on note     (3,988)    Payment on note           (17,300)   Long Term Capital gain
$ 201,087 Less: Capital gain deduction - 60%     (120,652)  Taxable gain per audit
80,435 Taxable gain per return
(47,506)   Understatement of gain
$ 32,929  21. The cost of replacing an electrical system in a building is a capital expenditure. Mountain State Steel Foundries, Inc. v. Commissioner,T. C. Memo. 1959-59, revd. on other issues 284 F.2d 737 (4th Cir. 1960). As to structural repairs and plastering, the cases turn on a factual determination of whether these repairs appreciably prolonged the life of the building. See Popular Dry Goods Co. v. Commissioner,6 B.T.A. 78 (1927), and H. S. Crocker Co. v. Commissioner,15 B.T.A. 175↩ (1929). 22. The amount of $ 203.62 was disallowed due to lack of substantiation. We agree. ↩
23. [Sec. 1.165-2(a), Income Tax Regs., states: (2) Allowance of deduction.↩ A loss incurred in a business or in a transaction entered into for profit and arising from the sudden termination of the usefulness in such business or transaction of any nondepreciable property, in a case where such business or transaction is discontinued or where such property is permanently discarded from use therein, shall be allowed as a deduction under section 165(a) for the taxable year in which the loss is actually sustained. For this purpose, the taxable year in which the loss is sustained is not necessarily the taxable year in which the overt act of abandonment, or the loss of title to the property, occurs.]
24. We cannot assume that the testimony of a critical absentee witness would be favorable. In fact, the normal inference is that it would have been unfavorable. Pollack v. Commissioner,47 T.C. 92, 108 (1966), affd. 392 F.2d 409 (5th Cir. 1968); see also Tokarski v. Commissioner,87 T.C. 74, 77 (1986); Bresler v. Commissioner,65 T.C. 182, 188 (1975); Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513↩ (10th Cir. 1947). 25. As a result, we need not reach respondent's alternative arguments with respect to this issue. ↩
26. Deductions are allowable under sec. 162 for expenses of carrying on an activity which constitutes the taxpayer's trade or business of which those expenses are ordinary and necessary to the conduct of a trade or business. Sec. 212 allows the taxpayers to deduct expenses incurred in connection with an activity engaged in for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. ↩
27. Petitioners reported gross receipts from their fishing activity for 1980 of $ 4,861.30. For 1980, the boat log states sales of $ 5,020. For 1981, petitioners reported gross receipts of $ 7,260. The boat log states fish sales of $ 8,023. ↩
28. Section 1001(b) provides: (b) AMOUNT REALIZED. -- The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received. * * * ↩
29. SEC. 705. DETERMINATION OF PARTNER'S INTEREST. (a) GENERAL RULE. -- The adjusted basis of a partner's interest in a partnership shall, except as provided in subsection (b), be the basis of such interest determined under section 722 (relating to contributions to a partnership) or section 742 (relating to transfers of partnership interests) -- (1) increased by the sum of his distributive share for the taxable year and prior taxable years of -- (A) taxable income of the partnership as determined under section 703(a), (B) income of the partnership exempt from tax under this title, and (C) the excess of the deductions for depletion over the basis of the property subject to depletion; (2) decreased (but not below zero) by distributions by the partnership as provided in section 733 and by the sum of his distributive share for the taxable year and prior taxable years of -- (A) losses of the partnership, and (B) expenditures of the partnership not deductible in computing its taxable income and not properly chargeable to capital account; * * * ↩
30. Respondent accepted petitioners' verification of the interest payment of $ 3,921.28 to Inez Morene and allowed this amount as an itemized deduction for 1981. ↩